PEOPLE v LOMBARDO

Docket No. 176431. Submitted April 2, 1996, at Lansing. Decided May 10, 1996, at 9:00 A.M.

Louise J. Lombardo pleaded guilty in the Ingham Circuit Court, Carolyn Stell, J., of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine. The charge arose after Florida authorities, through the use of trained dogs, discovered at a Federal Express office, seized, and opened without a search warrant a package containing two bricks of cocaine that was addressed to Joe Panta at a Lansing, Michigan, address. Michigan authorities prepared a look-alike package containing a mixture of cocaine and flour, and the package was delivered to the Lansing address by an undercover officer posing as a Federal Express employee. The defendant accepted the package, signed the name "Louise Panta" on the invoice, and, thereafter, was arrested for possession of 650 grams or more of cocaine. The defendant entered into a guilty plea agreement by which she was allowed to plead guilty of possession of twenty-five grams or more but less than fifty grams of cocaine with the recommendation of the prosecution that she receive a sentence of lifetime probation in exchange for her cooperation in prosecution of her boyfriend and two others. The plea was accepted, and the defendant cooperated in the prosecutions of the other parties; however, despite the prosecution's sentence recommendation, the court expressed reservations concerning the sentence and adjourned the sentencing hearing. Thereafter, the prosecution moved to vacate the plea on the basis that the defendant had violated the plea agreement by failing to abide with an oral agreement that she would inform the police of any communications with the other defendants. The court found that the defendant had violated the plea agreement by making undisclosed contacts with her boyfriend and set aside the guilty plea. Thereafter, the defendant entered her conditional plea of guilty of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine, was sentenced, and appealed.

The Court of Appeals held:

1. To prevail with respect to a claim of having been subjected to a constitutionally prohibited search or seizure, a defendant must demonstrate that, under the totality of the circumstances, there

existed a legitimate personal expectation of privacy in the area or object searched. The expectation of privacy must be that which society accepts as reasonable. The constitutional right to be free from unreasonable searches and seizures is personal, and the person asserting the right has the burden of proving standing as a result of a personal expectation of privacy.

2. The trial court properly denied the defendant's motion to suppress as evidence the package seized by the Florida authorities. The defendant failed to establish that she had any reasonable expectation of privacy in the package that was addressed to Joe Panta. The defendant's claim that she had standing because "Joe Panta" was her alias was belied by the facts of the case. Under the circumstances, the defendant had no reasonable expectation of privacy in the package seized and searched by the Florida authorities.

3. The prosecution abused its authority in seeking to have the original guilty plea set aside on the basis of a breach of the claimed oral addition to the written plea agreement, and the trial court erred in setting aside the original plea agreement. Allowing the prosecution to deny to the defendant the benefits of the original plea agreement after she had cooperated and complied fully with the written agreement would not serve the interests of justice. It is necessary to remand the case to the trial court to allow that court the opportunity to reinstate the original plea agreement.

Affirmed in part, reversed in part, and remanded.

1 SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY.

A defendant, in order to challenge a search or seizure, must have an expectation of privacy in the object of the search or seizure that society is prepared to recognize as reasonable (Const 1963, art 1, § 11).

2. CRIMINAL LAW — PLEA AGREEMENTS — APPEAL.

An agreement between a prosecutor and a defendant affecting the disposition of criminal charges must be viewed within the context of its function of serving the administration of criminal justice; the terms of such an agreement must be reviewed to determine whether the ends of justice will be served by their enforcement.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Donald E. Martin*, Prosecuting Attorney, and *Guy L. Sweet*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz* and *Lyle N. Marshall*), for the defendant on appeal.

Before: O'CONNELL, P.J., and HOOD and C. L. HORN,* JJ.

HOOD, J. Defendant entered a conditional plea of guilty of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), in return for dismissal of a charge of possession with intent to deliver 650 grams or more of cocaine. The trial court found substantial and compelling reasons to deviate downward from the statutory minimum of ten years and sentenced her to eight to twenty years' imprisonment. She appeals as of right. We affirm in part, reverse in part, and remand.

On March 11, 1993, at approximately 9:15 P.M., two police officers from Florida's Broward County Sheriff's Department, accompanied by two dogs trained to detect the scent of narcotics, made a training sweep, without a search warrant, at a Federal Express office. Both dogs indicated that narcotics were in a package addressed to a "Joe Panta" at 515 S. Butler Street, Apartment No. 10, Lansing, Michigan. The Broward Police Department seized the package, opened it, and determined that it contained two bricks of cocaine weighing one kilogram. Pursuant to instructions from the Tri-County Metro Narcotics Squad (TCM), the Michigan State Police Crime Laboratory prepared a "look-alike" package containing two plastic bags holding a diluted mixture of cocaine and flour. At 10:19 A.M. on the following day, a Lansing undercover

---

* Circuit judge, sitting on the Court of Appeals by assignment.

officer, posing as a Federal Express delivery person, made a controlled delivery of the "look-alike" package to the Butler Street apartment. Defendant accepted the package and signed the name "Louise Panta" on the invoice. Immediately thereafter, TCM obtained and executed a search warrant, and arrested defendant for possession of more than 650 grams of cocaine.

Upon her arrest, defendant agreed to cooperate with the Ingham County prosecutor and the TCM. She stated that on March 11, 1993, she had received a telephone call from her boyfriend, Frank Dimise, who told her that he was sending a package to her via Federal Express. Dimise instructed her that after receiving the package, she was to contact two individuals, Thomas Pantalone and Robert Earl, and inform them that the package had arrived. She was to deliver one plastic package to each individual, collect $16,000 from one of them, and then fly to Florida and deliver the money to Dimise.

Pursuant to a written plea agreement, defendant pleaded guilty to a reduced charge of possession of twenty-five grams or more but less than fifty grams of cocaine. In return, the prosecutor agreed to dismiss the charge of conspiracy to posses with intent to deliver 650 grams or more of cocaine and agreed to a sentence of lifetime probation. The trial court accepted the plea. At a subsequent sentencing hearing, both the prosecutor and defense counsel agreed that defendant had cooperated in the cases against her coconspirators and recommended that the court adopt the recommended lifetime probation sentence. The trial court, however, had reservations and decided to once again adjourn the sentencing procedure. The prosecutor subsequently moved to vacate

the plea agreement, alleging that defendant violated the plea agreement. Following a hearing of the prosecutor's motion, the trial court vacated the previously entered guilty plea, reinstituted the original charge, and ordered defendant to be held without bond. Defendant subsequently tendered a conditional plea of guilty of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine.

Defendant first argues that the trial court erred in denying her motion to suppress evidence of the package addressed to "Joe Panta." A trial court's ruling on legal grounds on a motion to suppress is reviewed under the clearly erroneous standard. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Smielewski*, 214 Mich App 55, 62; 542 NW2d 293 (1995). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993); *Burrell, supra.*

The Fourth Amendment guarantees the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Cantanzarite*, 211 Mich App 573, 580; 536 NW2d 570 (1995). In determining whether a person has a legitimate expectation of privacy so as to confer standing to challenge a search and seizure as violative of the Fourth Amendment, a two-part inquiry is employed. First, a defendant must demonstrate that, under the totality of the circumstances, there existed a legitimate personal expectation of privacy in the area or object searched. *California v Greenwood*, 486 US 35, 39; 108 S Ct 1625; 100 L Ed 2d 30 (1988); *People v Armendarez*, 188 Mich App 61, 70-71; 468 NW2d 893 (1991). Second, the individual's expectation must

be one that society accepts as reasonable. *California, supra; Armendarez, supra.* The Fourth Amendment right to freedom from unreasonable searches and seizures is personal, and the defendant bears the burden of proving standing as a result of a personal expectation of privacy. *People v Nash,* 418 Mich 196, 204; 341 NW2d 439 (1983); *People v Butler,* 193 Mich App 63, 70; 483 NW2d 430 (1992).

In this case, defendant concedes that a person lacks standing to challenge the search and seizure of a package intended for receipt by someone else. See *People v Smith,* 420 Mich 1, 25-26; 360 NW2d 841 (1984). But she argues that because the package in question was addressed to "Joe Panta," her alias, she has standing. This is a matter of first impression in Michigan. Defendant, however, relies on a federal ruling by the Court of Appeals for the Fifth Circuit that a defendant may have standing to challenge the search and seizure of a container or package addressed to a fictitious addressee if the defendant is the intended recipient of the package. *United States v Richards,* 638 F2d 765, 767 (CA 5, 1981). However, before analyzing the Fifth Circuit Court of Appeals' rulings relied upon by defendant, we must first determine whether she established that "Joe Panta" was her alias or fictitious name.

It is undisputed by the parties that defendant appeared to be the sole tenant of the apartment to which the package was addressed, that she told the police that she was expecting the package via Federal Express, and that she possessed the package at the time of the arrest. Nevertheless, as the trial court found, and we agree, the record is devoid of evidence that "Joe Panta" was defendant's alias or fictitious

name. The package was clearly addressed to "*Joe* Panta." But upon receiving the package, defendant signed the invoice "*Louise* Panta." Defendant did not present any fictitious identification bearing the name "Joe Panta," and no witnesses were produced supporting her allegation that she was known as "Joe Panta." The evidence raises the inference that *Joe* Panta was a different individual, and possibly male. This is further supported by the fact that one of the coconspirator's name was Thomas Lee Pantalone. Accordingly, we find that defendant failed to establish that "Joe Panta" was her alias. Absent a showing that she had a legitimate expectation of privacy in the package addressed to "Joe Panta," we conclude that defendant lacked Fourth Amendment standing to challenge the search and seizure. *California, supra; Smith, supra.*

Defendant also failed to satisfy the second prong of the test to establish standing to challenge a search and seizure under the Fourth Amendment—that society would consider such an expectation reasonable. We initially note that this Court is not bound by the Fifth Circuit Court of Appeals' analysis or rulings, although they may provide guidance. Defendant relies on *Richards, supra,* where the defendant, Raymond Richards, opened a post office box in the name of "Mehling Arts & Crafts." He furnished identification in the name of "Christopher Thomas," and signed that name on the application for the box. An overseas package containing heroin, addressed to Mehling Arts & Crafts, was subsequently intercepted at the foreign mail center in New York. A controlled delivery was then made to the "Mehling" post office box, and the defendant was arrested immediately after claiming

the package. *Id.*, p 768. The court determined that the defendant possessed standing because he and Mehling were, in effect, the same entity. *Id.*, p 770.

The Fifth Circuit Court of Appeals revisited this issue in *United States v Villarreal*, 963 F2d 770 (CA 5, 1992), where customs officials, acting without a search warrant, opened two suspicious fifty gallon drums at a trucking terminal and found marijuana. *Id.*, pp 772-773. The containers had been addressed to "Roland Martin." *Id.*, p 772. Defendants Villarreal and Gonzales ultimately obtained the drums and were arrested and charged with conspiracy to possess marijuana. *Id.*, p 773. The district court granted the defendants' motion to suppress the evidence, finding that they possessed standing to challenge the search. The court concluded that "Roland Martin" was the defendants' alter ego because Villarreal possessed an invoice that bore Martin's name and Gonzales had been introduced to at least one witness as "Roland Martin." *Id.*, p 774.

Although not relied on by defendant, the case in which the Fifth Circuit Court of Appeals most recently addressed this issue is *United States v Daniel*, 982 F2d 146, 148 (CA 5, 1993), where an agent of the Drug Enforcement Administration encountered a package at an airline terminal addressed to "Lynn Neal c/o Dottie's Hair Design." After obtaining a search warrant, the agent opened the package and found methamphetamine. A "look-alike" package was later delivered to the defendant's home. He was arrested thereafter and subsequently was convicted of possession with intent to deliver methamphetamine. *Id.*, p 147. In affirming the conviction, the court held that the defendant, Ricky Lynn Daniel, did not have

standing to challenge the search or seizure because he did not possess a legitimate expectation of privacy in a package addressed to "Lynn Neal." In this respect, the court noted that the defendant testified that he and Neal were two different persons. *Id.*, p 149. The court added that, notwithstanding these facts, standing was questionable:

> Furthermore, even if we accept the Government's assertion that "Lynn Neal" was Daniel's alias, we still question whether Daniel would have Fourth Amendment "standing" to assert the claim [regarding the search and seizure of the package at the airline terminal] *particularly where the use of that alias was obviously part of his criminal scheme.* See *United States v Lewis*, 738 F2d 916, 919-920, n 2 (CA 8, 1984). [*Id.* (emphasis added).]

In *Lewis*, *supra*, the defendant acquired a mailbox under the name of "David Woods" to receive merchandise he purchased with fraudulently acquired credit card numbers. A police officer seized from the mailbox a property tax bill addressed to "David Woods" and later arrested the defendant when the police discovered that he had set up the mailbox. *Id.*, p 918. The *Lewis* court did not address the standing issue, but resolved the validity of the challenged search on other grounds. However, in a footnote, the court noted:

> We have no difficulty in concluding that Lewis lacked a legitimate expectation of privacy in the mail box and its contents and, accordingly, that he would have no standing to raise the issue concerning evidence flowing from the mail box search. . . .

*          *          *

> . . . *A mailbox bearing a false name with a false address
> and used only to receive fraudulently received mailings
> does not merit an expectation of privacy that society is
> prepared to recognize as reasonable.* [*Id.*, pp 919-920, n 2
> (emphasis added).]

We find that defendant's reliance upon the cited
Fifth Circuit rulings is misplaced. As previously dis-
cussed, the record does not support defendant's con-
tention that "Joe Panta" was her alias. Further, the
cases relied upon by defendant, *Richards, supra,* and
*Villarreal, supra,* support the conclusion that "Joe
Panta" was not her alias. In each of those cases, there
was some evidence, i.e., a post office box, fictitious
identification, an invoice, or a witness, connecting the
defendant to the alias on the package or container.

Moreover, even if defendant had been successful in
establishing that "Joe Panta" was her alias, we would
still be inclined to find a lack of Fourth Amendment
standing because the use of the alias was part of a
criminal scheme—shipment of cocaine from Miami to
Lansing. As the *Daniel* court stated, a defendant does
not have standing "where the use of that alias was
obviously part of [the defendant's] criminal scheme."
*Daniel, supra,* p 149. Under the circumstances, we
could not conclude that defendant's expectation of
privacy would be one that society accepts as reasona-
ble. *Armendarez, supra.*

In conclusion, we find that defendant failed to
demonstrate that she had standing, pursuant to the
Fourth Amendment, to challenge the search and
seizure where it was not established that she had a
legitimate expectation of privacy in the package
addressed to "Joe Panta." *California, supra*;
*Armendarez, supra.* We therefore conclude that the

trial court did not clearly err in denying defendant's motion to suppress. *Burrell, supra.*

Defendant next argues that the trial court erred in granting the prosecutor's motion to withdraw the original plea agreement. We agree. The authority of a prosecutor to make bargains with defendants has long been recognized as an essential component of the efficient administration of justice. *People v Jackson,* 192 Mich App 10, 15; 480 NW2d 283 (1991). In light of the prosecutor's expansive powers and the public interest in maintaining the integrity of the judicial system, an agreement between a defendant and a prosecutor affecting the disposition of criminal charges must be reviewed within the context of its function of serving the administration of criminal justice. *People v Abrams,* 204 Mich App 667, 672; 516 NW2d 80 (1994); *Jackson, supra.* Because strict contractual theories and principles peculiar to commercial transactions may not be applicable, review of the bargain at issue is based on not only the terms of the agreement, but also on whether the ends of justice are served by enforcing its terms. *Abrams, supra; People v Walton,* 176 Mich App 821, 825; 440 NW2d 114 (1989).

At the hearing of the motion to set aside the original plea agreement, the prosecutor argued that defendant, contrary to an oral agreement and while she was working with the TCM, made over three hundred undisclosed personal telephone calls to Dimise and visited him twice. Defendant argued that she had not violated the written agreement. The prosecutor presented the testimony of two police officers and their supervisor. In granting the motion to set aside the plea agreement, the trial court construed the writ-

ten plea agreement to include the requirement that defendant was to inform the police of any communications with Dimise, Earl, or Pantalone. The trial court further found that defendant's undisclosed contacts with Dimise was a significant breach of the plea agreement.

The written agreement contained four crucial acts that defendant was to perform: "(1) truthfully testify at all proceedings, hearings and trials; (2) give statements, descriptions, depositions, and/or testimony as required against Francisco Dimise, Tom Pantalone, and Bob Earl; (3) participate in telephonic taping as required; [and] (4) work with a control officer in any other way as necessary."

We find that the trial court erred in setting aside the original plea agreement. The officers testified that defendant was verbally told that she was required to report all contacts with Dimise and that on two occasions she denied that she had any contact with him. However, this purported embellishment was not contained in the written agreement. The two police officers acknowledged that neither the plea agreement nor any other written document required or instructed defendant not to contact Dimise without advising the police. Moreover, one officer testified that, even though he knew that defendant was represented by counsel, he had never informed her counsel of the alleged oral agreement to report any contacts she had with Dimise.

Further, the record reveals that defendant cooperated and complied with the written agreement. As agreed, defendant contacted Pantalone and Earl and arranged for them to each pick up a package at her apartment, after which they were immediately appre-

hended. She placed a tape-recorded call to Dimise regarding the cocaine shipment. She testified at Earl's trial. She also warned the police that Dimise would leave the country if released on bond. It is clear that the goal of defendant's cooperation was to aid in the apprehension and conviction of Dimise, Earl, and Pantalone. Within two days of defendant's arrest, the three were arrested. At the hearing, the officers agreed that defendant complied with the written agreement and that it was because of her cooperation that they had been able to apprehend the three coconspirators.

To allow the prosecutor to renege on the agreement would make the bargain illusory and would "render the promises meaningless." *Jackson, supra,* p 16. It would be an abuse of the prosecutor's authority, particularly in light of the disparity in the respective bargaining positions, to permit the prosecutor to retain the right to withdraw the agreement even after defendant had acted in reliance on the promises contained in the agreement and had provided her full cooperation and the police and prosecutor received what they had bargained for. *Id.*

We therefore find that, under the circumstances of this case, the ends of justice would not be served by, and an abuse of prosecutorial authority would result from, allowing the prosecutor to renege on the original plea agreement. Accordingly, we reverse and remand to allow the trial court the opportunity to reinstate the original plea agreement.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.