PEOPLE v CUSTER

Docket No. 218817. Submitted December 7, 1999, at Lansing. Decided July 28, 2000, at 9:00 A.M. Leave to appeal granted, 463 Mich 907.

Michael R. Custer was charged in the 76th District Court with the delivery and manufacture of five to forty-five kilograms of marijuana, maintaining premises for the use or sale of controlled substances, and conspiracy to deliver five to forty-five kilograms of marijuana. The district court, James E. Wilson, J., granted the defendant's motion to suppress the evidence and dismissed the case, finding that the police conducted an improper patdown search of the defendant and, using evidence obtained as a result of the improper search, conducted an invalid search of the defendant's home without a warrant. The Isabella Circuit Court, Paul H. Chamberlain, J., affirmed the dismissal. The prosecution appealed by leave granted.

The Court of Appeals held:

1. The patdown search of the defendant, performed incident to a proper investigatory stop of a vehicle in which the defendant was a passenger, was proper. The lower courts clearly erred in finding that the patdown search was invalid on the bases that the arresting police officer testified that he was searching for both weapons and drugs, rather than exclusively for weapons, and that the officer did not initially fear for his safety while investigating the driver of the vehicle and became fearful only after discovering that the driver possessed marijuana. The officer's decision to conduct the search was properly based on his objective observations of the situation, the information he received at the scene, and his extensive experience as a police officer. The objective facts, and the reasonable inferences drawn therefrom, that prompted the officer to conclude that his safety, and that of his partner, might be at risk, were sufficient to warrant a brief patdown search of the defendant. The lower courts clearly erred in finding the patdown search violated the Fourth Amendment.

2. The arresting officer had probable cause to believe that the objects he felt in the defendant's pocket while conducting the patdown search were contraband. The officer was justified in removing the items pursuant to the plain feel exception to the war-

rant requirement. However, the officer was not authorized to further examine the items (Polaroid photographs) without a warrant after it became immediately apparent that the items were neither weapons nor contraband. The officer's further examination of the photographs, which revealed evidence of illegal activity that was not apparent upon the officer's initial inspection, constituted a new search and an unlawful invasion of the defendant's privacy that was unjustified by the exigent circumstances that validated the removal of the photographs from the defendant's pocket. The photographs and all evidence obtained during the search of the defendant's house were properly suppressed as having been obtained as the result of an unconstitutional search. The lower courts reached the right result, albeit for the wrong reason.

1. SEARCHES AND SEIZURES — PATDOWN SEARCHES.

A police officer who makes a valid investigatory stop of a person and has a reasonable suspicion that the person stopped for questioning is armed and thus poses a danger to the officer may perform a limited patdown search of the person for weapons; the officer conducting the search may seize items that the officer has probable cause to believe feel like contraband; the relevant inquiry in determining the propriety of the search is whether the officer had a particularized and objective basis for the suspicion of criminal activity.

2. SEARCHES AND SEIZURES — PATDOWN SEARCHES — PLAIN FEEL EXCEPTION.

The plain feel exception to the search warrant requirement allows the seizure without a warrant of an object felt during an officer's legitimate patdown search of a person for weapons where the identity of the object is immediately apparent and the officer has probable cause to believe that the object is contraband; "immediately apparent" means probable cause to believe, not near certainty, that the item felt is contraband; probable cause requires only a fair probability that contraband or evidence of a crime will be found in a particular place.

3. SEARCHES AND SEIZURES — PATDOWN SEARCHES — PLAIN FEEL EXCEPTION.

The plain feel exception to the search warrant requirement allows a police officer conducting a legitimate patdown search of a person for weapons to seize without a warrant an object where the identity of the object is immediately apparent and the officer has probable cause to believe that the object is contraband; if the officer then determines that the seized object is neither contraband nor a weapon, a subsequent search of the object is prohibited unless authorized by one of the recognized exceptions to the search warrant requirement.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Larry J. Burdick,* Prosecuting Attorney, and *Roy R. Kranz,* Assistant Prosecuting Attorney, for the people.

*Hall & Lewis, P.C.* (by *John W. Lewis* and *Becky J. Bolles*), for the defendant.

Before: DOCTOROFF, P.J., and FITZGERALD and WILDER, JJ.

WILDER, J. Defendant was charged with delivery and manufacture of five to forty-five kilograms of marijuana, MCL 333.7401(2)(d)(ii); MSA 14.15(7401)(2)(d)(ii), maintaining premises for the use or sale of controlled substances, MCL 333.7405(1)(d); MSA 14.15(7405)(1)(d), and conspiracy to deliver five to forty-five kilograms of marijuana, MCL 750.157a; MSA 28.354(1), MCL 333.7401(2)(d)(ii); MSA 14.15(7401)(2)(d)(ii). The district court granted defendant's motion to suppress the evidence and dismissed the case, finding that the police conducted an improper patdown search of defendant and, using the "fruit of the poisonous search," conducted an invalid search of his home without a warrant. The circuit court affirmed the dismissal and this Court granted leave to appeal "limited to the issues raised in the application." We affirm.

I. FACTS AND PROCEDURAL BACKGROUND

Officer Robert Greenleaf and a fellow officer from the Bay City Police Department were dispatched to a residence in Bay City to investigate a possible trespass. When they arrived at the location, the officers observed a parked vehicle occupied by two individu-

als. Officer Greenleaf approached the vehicle in which Billy Holder and defendant were located and, suspecting that Holder, the driver of the vehicle, was intoxicated, asked him to turn off the ignition and step out of the vehicle. After determining that Holder was too intoxicated to drive, Officer Greenleaf advised Holder that he could either have his vehicle towed to an impound lot or back to his residence at his own expense. Holder elected to have the vehicle towed back to his residence in Mt. Pleasant. Officer Greenleaf asked Holder to demonstrate that he had sufficient funds to pay the cost of towing the vehicle. Holder retrieved a wad of money out of his pants pocket estimated at approximately $500 in mostly $10 and $20 bills, along with a small plastic bag that appeared to Officer Greenleaf to contain marijuana. Officer Greenleaf arrested Holder, searched him for weapons, and placed him in the patrol car. As he entered the patrol car, Helder yelled to defendant, "[d]on't tell them a f . . . . .. thing."

After Holder was secured in the police vehicle, Officer Greenleaf asked defendant to get out of the vehicle. Officer Greenleaf did not initially fear for his safety, but after discovering marijuana on Holder, he concluded, on the basis of his training and experience, that defendant could be armed and dangerous. Thus, in order to ensure his safety, and that of his partner, Officer Greenleaf conducted a patdown search of defendant for weapons and contraband. Officer Greenleaf also indicated that defendant was going to be transported to the police department for questioning and it was departmental policy that anyone being transported in a police vehicle was to be patted down for weapons or possible illegal sub-

stances. During the patdown, Officer Greenleaf felt what he believed to be a two- by three-inch card of blotter acid in defendant's front pants pocket and he removed the item. Instead of a card of blotter acid, however, Officer Greenleaf found three Polaroid pictures and placed them facedown on top of the vehicle without inspecting them. No other items were found on defendant. After completing the patdown, Officer Greenleaf retrieved the pictures from the roof of the vehicle and examined them. The three photographs depicted (1) Holder carrying two one-pound bags of marijuana with additional one-pound bags of marijuana on a coffee table in front of him, (2) a number of one-pound bags of marijuana, and (3) Holder sitting in a chair next to a suitcase that contained numerous one-pound bags of marijuana. The photographs were seized and defendant was transported to the police station for questioning.

Detective Joseph Lanava, who arrived at the scene to assist in the investigation, contacted Detective Jesse Flores in Mt. Pleasant, where defendant resided, and provided him with three addresses in Mt. Pleasant to check in connection with a traffic stop where a controlled substance was discovered. Specifically, Detective Lanava asked Detective Flores to determine if any of the houses contained furnishings similar to those found in the photographs seized from defendant. When Detective Flores arrived at defendant's address, he peered into the house through the front window using a flashlight. He communicated a description of the room and the items he observed to the officers in Bay City. Detective Flores' observations were subsequently used to obtain a search war-

rant for defendant's house, from which approximately fifteen pounds of marijuana were seized.

Defendant was subsequently charged with delivery and manufacture of five to forty-five kilograms of marijuana, maintaining premises for the use or sale of controlled substances, and conspiracy to deliver five to forty-five kilograms of marijuana. The district court dismissed the charges, finding that the patdown search of defendant was illegal because Officer Greenleaf was admittedly not in fear for his safety at the time of the search and he searched defendant for weapons *and* drugs. The circuit court affirmed the district court's ruling, finding that, under the totality of the circumstances, the district court's findings were not clearly erroneous. The instant appeal ensued.

## II. STANDARD OF REVIEW

A lower court's factual findings in a suppression hearing are reviewed for clear error and will be affirmed unless the reviewing court has a definite and firm conviction that a mistake has been made. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Lombardo*, 216 Mich App 500, 504; 549 NW2d 596 (1996). The lower court's ultimate ruling with regard to the motion to suppress is reviewed de novo. *People v Garvin*, 235 Mich App 90, 96; 597 NW2d 194 (1999).

## III. ANALYSIS

In this case, we are asked to decide whether a patdown search performed on defendant incident to an investigatory stop, and a search of items seized

from defendant during the patdown search, were invalid under the Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution, which guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. We conclude that the patdown search of defendant was proper, but the subsequent search of the incriminating photographs that formed the basis of the search warrant for defendant's residence was constitutionally infirm.

### A. PATDOWN SEARCH OF DEFENDANT

Initially, we note that there is no question that the investigative stop in this case was proper. Officer Greenleaf was investigating a complaint regarding "unwanted subjects" in the area. When Officer Greenleaf arrived at the scene, he observed defendant and Holder in a vehicle and briefly questioned them about their presence in the area. A brief, on-the-scene detention of an individual in a public place for the purpose of determining whether a crime has been committed is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention. *Michigan v Summers*, 452 US 692, 700, n 12; 101 S Ct 2587; 69 L Ed 2d 340 (1981); *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v Shabaz*, 424 Mich 42, 56-57; 378 NW2d 451 (1985).

Further, an officer who makes a valid investigatory stop may perform a limited patdown search for weapons if the officer has a reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer. *Terry, supra; People v*

*Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). To demonstrate reasonable suspicion, an officer must articulate specific facts that, taken together with rational inferences drawn from those facts, warrant the intrusion. *Terry*, *supra*. Patdown searches are reasonably designed to discover weapons or other instruments that might injure an officer. *Champion*, *supra*. However, in conducting a patdown search, an officer may also seize items that the officer has probable cause to believe feel like contraband. *Minnesota v Dickerson*, 508 US 366; 113 S Ct 2130; 124 L Ed 2d 334 (1993); *Champion*, *supra* at 105.

In this case, Officer Greenleaf determined that defendant and Holder were the subjects of a complaint lodged by a female who was followed home from a bar by two men. He asked Holder, who appeared intoxicated, to get out of his vehicle. Officer Greenleaf immediately confirmed from the odor on Holder's breath, his bloodshot eyes, and his unsteady gait, that he was intoxicated. Holder was presented with two options—have his vehicle towed to a local facility or back to his home in Mt. Pleasant at his own expense. Holder elected to have his vehicle towed to his home. When asked to demonstrate that he had sufficient funds to pay the fee for the towing service, Holder removed from his pocket approximately $500 in $10 to $20 bills as well as a small, clear plastic bag containing what appeared to be marijuana. At this point, Officer Greenleaf had probable cause to believe that Holder had committed an offense, and Holder was appropriately arrested, searched, handcuffed, and placed in the patrol car. Officer Greenleaf then turned his attention to defendant, who had remained seated

in the vehicle for approximately fifteen minutes while Holder was questioned and searched.

The district court ruled that Officer Greenleaf's search of defendant was invalid because Officer Greenleaf testified that he searched defendant for both weapons and drugs, not exclusively for weapons, and he did not initially fear for his safety. The circuit court affirmed, finding that the district court properly concluded from the evidence that the patdown search was improper.

After a thorough review of the record, we find that the lower courts' finding that the patdown search of defendant was invalid because Officer Greenleaf testified that he was searching for both weapons and drugs, rather than exclusively for weapons, and that he did not initially fear for his safety while investigating Holder until he discovered the marijuana, is clearly erroneous. The relevant inquiry when deciding whether the police properly conducted a patdown search is whether the detaining officer "had a particularized and *objective* basis for the suspicion of criminal activity." *Champion, supra* at 98-99 (emphasis added). See *Ohio v Robinette,* 519 US 33, 38; 117 S Ct 417; 136 L Ed 2d 347 (1996) (proper arrest for a traffic violation was not rendered invalid by fact that police officer's subjective intent was to conduct a narcotics search); *Scott v United States,* 436 US 128, 138; 98 S Ct 1717; 56 L Ed 2d 168 (1978) (fact that officer does not have state of mind that is hypothecated by the reasons that provide legal justification for officer's action does not invalidate action as long as the circumstances, viewed objectively, justify the action). This objective standard involves a determination whether "the facts available to the officer at the

moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry, supra* at 21-22 (citation omitted). The United States Supreme Court has stated that a particularized suspicion of criminal activity is derived from

> various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person. [*United States v Cortez*, 449 US 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981).]

See also *People v Levine*, 461 Mich 172, 185; 600 NW2d 622 (1999) (an officer's observations must be examined by the court in light of the officer's experience and training, not in a vacuum or from a hypertechnical perspective).

Here, Officer Greenleaf discovered clear evidence of criminal activity by Holder. It was undisputed that Officer Greenleaf was responding to a complaint of a possible trespass when he discovered defendant with Holder in a vehicle near the complainant's home. It was further undisputed that defendant was a passenger in Holder's vehicle in which criminal activity was discovered. Officer Greenleaf testified that the basis for his decision to conduct a patdown search of defendant was that defendant might have a weapon and might pose a threat to Officer Greenleaf or his partner. Officer Greenleaf also stated that, in view of Holder's possession of marijuana, he was searching defendant for both weapons and drugs. Further, Officer Greenleaf testified that defendant was going

to be transported in the patrol car to the police station for questioning and that all persons placed in a police vehicle were routinely searched for weapons. On this record, we do not find that Officer Greenleaf's statement that he did not initially fear for his safety, or his subjective belief at the time of the search that defendant may also possess drugs, was sufficient to invalidate the patdown search. Rather, Officer Greenleaf's decision to conduct the search was properly based on his objective observations of the situation, the information he received at the scene, and his extensive experience as a police officer regarding the "modes or patterns of operation of certain kinds of lawbreakers." *Cortez, supra* at 418. We find that these objective facts, and the reasonable inferences drawn therefrom, that prompted Officer Greenleaf to conclude that his safety, and that of his partner, might be at risk, were sufficient to warrant a brief patdown search of defendant. Accordingly, the lower courts' finding that the patdown search violated the Fourth Amendment was clearly erroneous.

### B. SEARCH AND SEIZURE OF THE PHOTOGRAPHS

Having concluded that the patdown search of defendant was valid, we turn next to the question whether Officer Greenleaf's removal of the photographs from defendant's pocket during the patdown search, and his subsequent examination of the photographs after the patdown search was completed, constituted an invalid search and seizure in violation of defendant's Fourth Amendment rights.

Officer Greenleaf testified that while conducting the patdown search of defendant, he felt a two- by three-inch object in defendant's pocket that he

believed was a card of blotter acid. His belief was based on the discovery of marijuana and a large amount of money on Holder, the fact that defendant was with Holder during the entire evening and present at the location where the trespassing complaint was being investigated, his experience as a police officer, and his knowledge that blotter acid was often contained on sheets of cardboard. Officer Greenleaf removed the items from defendant's pocket and placed them facedown on the top of the vehicle without examining them and continued to search defendant. After completing the search and finding neither weapons nor contraband on defendant, Officer Greenleaf then retrieved the items from the top of the vehicle and discovered that what he had felt were three Polaroid pictures, not blotter acid. Rather than returning the photographs to defendant after it became immediately apparent that they were neither contraband nor weapons, Officer Greenleaf turned the photographs over and proceeded to examine each picture, at which time he discovered their incriminating nature.

The prosecution argues that because the photographs were seized during a lawful search of defendant and were believed to be contraband at the time they were removed, Officer Greenleaf was allowed to remove the photographs pursuant to the "plain feel" exception to the search warrant requirement and, thus, there was no Fourth Amendment violation.

> The plain feel exception to the warrant requirement . . . allows the seizure without a warrant of an object felt during a legitimate patdown search for weapons when the identity of the object is immediately apparent and the officer has

> probable cause to believe that the object is contraband.
> [*Champion, supra* at 100-101 (emphases deleted).]

The "immediately apparent" requirement means probable cause to believe—not near certainty—that the item felt is contraband. *Id.* at 105; *People v Massey (On Remand)*, 220 Mich App 56, 58; 558 NW2d 253 (1996). "Probable cause" requires only " 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Levine, supra* at 185, quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983); *Garvin, supra* at 102.

Applying these principles to the instant case, we conclude from the totality of the circumstances that Officer Greenleaf had probable cause to believe (i.e., there was a fair probability) that the object he felt in defendant's pocket was a sheet of blotter acid. The following facts support this conclusion: (1) Holder, the driver of the vehicle in which defendant was a passenger, was arrested for possession of marijuana, (2) Holder screamed to defendant as he entered the patrol car, "[d]on't tell them a f . . . . .. thing," and (3) Officer Greenleaf had twenty-three years of experience as a police officer and was aware that cards of blotter acid were capable of fitting into a pants pocket like the objects that he felt on defendant's person. As our Supreme Court noted in *Champion, supra* at 112, "courts applying the plain feel exception must appreciate the totality of the circumstances in the given case." Under these circumstances, we find that Officer Greenleaf reasonably concluded that the items he felt on defendant's person were contraband. Therefore, because probable cause to conduct a patdown search of defendant existed, and because the patdown search did not exceed the scope of

*Terry*, i.e., it was immediately apparent during the authorized patdown that defendant was carrying contraband, Officer Greenleaf was justified in removing the items from defendant's pocket pursuant to the plain feel exception to the warrant requirement.

However, while the plain feel exception authorized removal of the items from defendant's pocket, an entirely separate question remains regarding whether Officer Greenleaf was authorized to examine the photographs without a warrant, after it became immediately apparent that the items seized were neither weapons nor contraband.

The prosecution argues that once Officer Greenleaf had lawfully seized the items from defendant pursuant to the plain feel exception, he was justified in further examining the items to determine whether they were indeed contraband as he suspected. The prosecution contends that because the photographs were removed from defendant's pocket on the basis that their incriminating nature was readily apparent to Officer Greenleaf, no Fourth Amendment violation occurred.

We reject the prosecution's argument that Officer Greenleaf's inspection of the photographs after he seized the items and placed them facedown on the roof of the vehicle did not constitute a new search. The photographs had already been lawfully seized from defendant's person pursuant to the plain feel doctrine. In order to justify the subsequent search of the photographs after Officer Greenleaf determined that they were neither contraband nor weapons, it was incumbent upon the prosecution to show that the search was authorized by one of the recognized exceptions to the warrant requirement. The pros-

ecutor's failure to articulate an exception to the warrant requirement authorizing the search of the photographs under these circumstances compels the conclusion that the search was invalid.

We further note that the prosecution's reliance on the plain feel doctrine to justify the search of the photographs after they were removed is misplaced because it ignores the fundamental characteristic of the doctrine that it is "exclusively a seizure rationale." See *Champion, supra* at 101. "No searching, no matter how minimal, may be done under the auspices of the plain view doctrine." See *id.*; see also *Arizona v Hicks*, 480 US 321, 326; 107 S Ct 1149; 94 L Ed 2d 347 (1987).

Officer Greenleaf candidly testified that upon removing the photographs from defendant's pocket and discovering that they were not in fact blotter acid, his initial thought was that he could not imagine why anyone would carry Polaroid photographs in their pocket. However, rather than return the photographs to defendant after determining that they were not contraband, Officer Greenleaf proceeded to turn the photographs over and examine them more closely. We find that this additional inspection of the photographs, which was unrelated to the initial justification for the search without a warrant and revealed evidence of illegal activity that was not immediately apparent upon the officer's initial inspection, constituted an unlawful invasion of defendant's privacy that was unjustified by the exigent circumstances that validated the removal of the photographs from defendant's pocket. Officer Greenleaf's initial glance at the facedown photographs was sufficient to alert him to the fact that they were neither weapons nor contra-

band. Thus, because the plain feel doctrine permitted only the *seizure* of the items from defendant's pocket without a warrant and did not extend to the subsequent search of the photographs after Officer Greenleaf immediately determined that the items were not contraband, and because the prosecution did not assert below, or argue on appeal, any other lawful basis for the search of the photographs without a warrant, we conclude as a matter of law that the search was illegal and the photographs were properly suppressed. Although our decision is based on grounds different from those cited by the lower courts, we will not reverse a lower court decision that reached the right result, albeit for the wrong reason. *People v Brake*, 208 Mich App 233, 242, n 2; 527 NW2d 56 (1994).

In light of our conclusion that the photographs were properly suppressed as the result of an illegal search, all evidence obtained during the search of defendant's residence was also properly suppressed as "fruits of the poisonous tree." Absent any evidence linking defendant to the house where the marijuana was discovered, there was insufficient evidence to bind defendant over on the charged offenses. Accordingly, we need not address the prosecution's remaining claim.

Affirmed.