PEOPLE v CUSTER (ON REMAND)

Docket No. 218817. Submitted August 29, 2001, at Lansing. Decided
     December 4, 2001, at 9:25 A.M.

     Michael R. Custer was charged in the 76th District Court with several
          drug-related offenses. The court, James E. Wilson, J., dismissed the
          charges on the ground that the patdown search of the defendant
          had been illegal. As a result of the search, the police had discov-
          ered photographs of the defendant's house, indicating that it con-
          tained large quantities of marijuana. Marijuana was subsequently
          seized from the house. The Isabella Circuit Court, Paul H.
          Chamberlain, J., affirmed. The Court of Appeals, DOCTOROFF, P.J.,
          and FITZGERALD and WILDER, JJ., affirmed, finding that, even though
          the patdown search was legal, the police officer should not have
          turned the photographs over to view the fronts of them. 242 Mich
          App 59 (2000). The Supreme Court granted the prosecution's appli-
          cation for leave to appeal, and a majority of the justices agreed
          with the determination of the Court of Appeals that the investiga-
          tory stop, patdown search, and removal of the photographs from
          the defendant's pocket were proper. A separate majority also found
          that the photographs should not have been suppressed. The Court
          reversed the judgment of the Court of Appeals and remanded the
          matter to the Court of Appeals for a determination whether the
          search of the defendant's home was proper. 465 Mich 319 (2001).

     On remand, the Court of Appeals held:

     Because the photographs were properly examined by the arrest-
     ing officer, probable cause existed to search the defendant's home.
     The judgment of the circuit court must be reversed and the matter
     must be remanded to the circuit court for further proceedings.

     1. The police detective was properly present on the porch of the
     defendant's house when he observed the contents of the front room
     through a window whose blinds were pulled up. Because the blinds
     were not drawn, the defendant had no actual, subjective expecta-
     tion of privacy regarding the contents of the front room. The defen-
     dant's Fourth Amendment rights were not violated.

     2. On the basis of the detective's observations, there was prob-
     able cause to believe that the defendant's residence was the same
     residence depicted in the photographs. Probable cause existed to

issue the search warrant, and the evidence found in the residence was properly seized and should not have been suppressed.

Reversed and remanded.

CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — PRIVACY.

A two-part inquiry is employed to determine whether a person has a legitimate expectation of privacy so as to confer standing to challenge a search and seizure as violative of the Fourth Amendment: the person must demonstrate that, under the totality of the circumstances, there existed a legitimate personal expectation of privacy in the area or object searched, and the person's expectation must be one that society accepts as reasonable (US Const, Am IV).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Larry J. Burdick*, Prosecuting Attorney, and *Roy R. Kranz*, Assistant Prosecuting Attorney, for the people.

*Hall & Lewis, P.C.* (by *John W. Lewis* and *Becky J. Bolles*), for the defendant.

ON REMAND

Before: DOCTOROFF, P.J., and FITZGERALD and WILDER, JJ.

WILDER, J. This case is before us on remand[1] from the Supreme Court following its review of our previous opinion[2] in this case. There, we affirmed the circuit court's order affirming the district court's order suppressing evidence against defendant and dismissing the case. *People v Custer*, 242 Mich App 59, 73-74; 618 NW2d 75 (2000) (*Custer I*). The Supreme Court reversed the judgment of our Court and remanded to us for purposes of deciding, in light of its opinion, whether the search of defendant's home

---

[1] *People v Custer*, 465 Mich 319; 630 NW2d 870 (2001).

[2] *People v Custer*, 242 Mich App 59, 73-74; 618 NW2d 75 (2000).

was proper. *People v Custer*, 465 Mich 319, 344; 630 NW2d 870 (2001) (*Custer II*). We conclude that because the photographs seized from defendant were properly examined by the arresting officer, *id.* at 333-335, probable cause existed to search defendant's home. We therefore reverse the decision of the circuit court and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

In our previous opinion, we summarized the facts of this case as follows:

> Officer Robert Greenleaf and a fellow officer from the Bay City Police Department were dispatched to a residence in Bay City to investigate a possible trespass. When they arrived at the location, the officers observed a parked vehicle occupied by two individuals. Officer Greenleaf approached the vehicle in which Billy Holder and defendant were located and, suspecting that Holder, the driver of the vehicle, was intoxicated, asked him to turn off the ignition and step out of the vehicle. After determining that Holder was too intoxicated to drive, Officer Greenleaf advised Holder that he could either have his vehicle towed to an impound lot or back to his residence at his own expense. Holder elected to have the vehicle towed back to his residence in Mt. Pleasant. Officer Greenleaf asked Holder to demonstrate that he had sufficient funds to pay the cost of towing the vehicle. Holder retrieved a wad of money out of his pants pocket estimated at approximately $500 in mostly $10 and $20 bills, along with a small plastic bag that appeared to Officer Greenleaf to contain marijuana. Officer Greenleaf arrested Holder, searched him for weapons, and placed him in the patrol car. As he entered the patrol car, Holder yelled to defendant, "[d]on't tell them a f——thing."

> After Holder was secured in the police vehicle, Officer Greenleaf asked defendant to get out of the vehicle. Officer Greenleaf did not initially fear for his safety, but after dis-

covering marijuana on Holder, he concluded, on the basis of his training and experience, that defendant could be armed and dangerous. Thus, in order to ensure his safety, and that of his partner, Officer Greenleaf conducted a patdown search of defendant for weapons and contraband. Officer Greenleaf also indicated that defendant was going to be transported to the police department for questioning and it was departmental policy that anyone being transported in a police vehicle was to be patted down for weapons or possible illegal substances. During the patdown, Officer Greenleaf felt what he believed to be a two-by three-inch card of blotter acid in defendant's front pants pocket and he removed the item. Instead of a card of blotter acid, however, Officer Greenleaf found three Polaroid pictures and placed them facedown on top of the vehicle without inspecting them. No other items were found on defendant. After completing the patdown, Officer Greenleaf retrieved the pictures from the roof of the vehicle and examined them. The three photographs depicted (1) Holder carrying two one-pound bags of marijuana with additional one-pound bags of marijuana on a coffee table in front of him, (2) a number of one-pound bags of marijuana, and (3) Holder sitting in a chair next to a suitcase that contained numerous one-pound bags of marijuana. The photographs were seized and defendant was transported to the police station for questioning.

Detective Joseph Lanava, who arrived at the scene to assist in the investigation, contacted Detective Jesse Flores in Mt. Pleasant, where defendant resided, and provided him with three addresses in Mt. Pleasant to check in connection with a traffic stop where a controlled substance was discovered. Specifically, Detective Lanava asked Detective Flores to determine if any of the houses contained furnishings similar to those found in the photographs seized from defendant. When Detective Flores arrived at defendant's address, he peered into the house through the front window using a flashlight. He communicated a description of the room and the items he observed to the officers in Bay City. Detective Flores' observations were subsequently used to obtain a

search warrant for defendant's house, from which approximately fifteen pounds of marijuana were seized.

Defendant was subsequently charged with delivery and manufacture of five to forty-five kilograms of marijuana,[3] maintaining premises for the use or sale of controlled substances,[4] and conspiracy to deliver five to forty-five kilograms of marijuana.[5] The district court dismissed the charges, finding that the patdown search of defendant was illegal because Officer Greenleaf was admittedly not in fear for his safety at the time of the search and he searched defendant for weapons *and* drugs. The circuit court affirmed the district court's ruling, finding that, under the totality of the circumstances, the district court's findings were not clearly erroneous. The instant appeal ensued. [*Custer I, supra* at 61-64.]

In addition to these facts, we note that the record establishes that upon arriving at defendant's home, Detective Flores went to the front entrance and knocked on the door to determine if anyone was home and that in reaching the front entrance, Detective Flores did not cross any obstructions, such as a gate or fence, nor did he observe any signs forbidding people from entering the property in order to knock on the front door. It was only after approaching the front door that Detective Flores noticed that the window immediately to the left of the door had its inside blinds pulled up, allowing him to observe what was in the room.[6]

---

[3] MCL 333.7401(2)(d)(ii).

[4] MCL 333.7405(d).

[5] MCL 750.157a; MCL 333.7401(2)(d)(ii).

[6] These facts have been added because, although they were not pertinent to our resolution of the previous case, they are essential for proper resolution of defendant's Fourth Amendment challenge.

On appeal, we held that even though the investigatory stop, patdown, and removal of the photographs from defendant's pocket were proper, *id.* at 65, 69, 72,

> because the plain feel doctrine permitted only the *seizure* of the items from defendant's pocket without a warrant and did not extend to the subsequent search of the photographs after Officer Greenleaf immediately determined that the items were not contraband, . . . we conclude[d] as a matter of law that the search was illegal and the photographs were properly suppressed. [*Id.* at 74.]

We further concluded that, because the photographs were properly suppressed, the circuit court correctly suppressed the evidence found at defendant's home as " 'fruits of the poisonous tree,' " *id.*, and held that "there was insufficient evidence to bind defendant over on the charged offenses." *Id.* We therefore affirmed the district and circuit courts' orders dismissing the charges against defendant.

The Supreme Court granted the prosecution's application for leave to appeal,[7] and subsequently a majority of the Supreme Court justices agreed with our determination that the investigatory stop, patdown, and removal of the photographs from defendant's pocket were proper. *Custer II, supra* at 323, 344 (MARKMAN, J.), 345 (WEAVER, J.), 350, 352 (CAVANAGH, J.), 373 (YOUNG, J.). A separate majority of the Supreme Court justices also found that the photographs should not have been suppressed. In so holding, the lead opinion stated that

> [b]ecause the officer had already lawfully seized the photographs when he turned them over to examine their fronts,

---

[7] *People v Custer*, 463 Mich 907 (2000).

and because defendant's reasonable expectation of privacy in the outer surfaces of those photographs had, at the least, been significantly diminished, there was no constitutional "search" for purposes of the Fourth Amendment.

. . . This is true because once the police lawfully take possession of an object, one's expectation of privacy with respect to that object has "at least partially dissipated . . . ." [*People v Rivard*, 59 Mich App 530, 533-534; 230 NW2d 6 (1975).] For these reasons, we conclude that the exterior of an item that is validly seized during a patdown search may be examined without a search warrant, even if the officer subsequently learns that the item is not the contraband the officer initially thought that it was before the seizure.

. . . Therefore, we conclude that the turning over and examining of the other side of the photographs by the police, under the circumstances of this case, did not deprive defendant of his constitutional rights under the Fourth Amendment of [the] United States Constitution or Const 1963, art 1, § 11. [*Custer* II, *supra* at 336-338 (opinion of MARKMAN, J.).]

Justice WEAVER concurred, reasoning that if "the initial seizure of the photographs was valid under the plain feel exception, then the subsequent examination of those photographs was also valid." *Custer II, supra* at 345, citing *Arizona v Hicks*, 480 US 321, 326; 107 S Ct 1149; 94 L Ed 2d 347 (1987), and *People v Champion*, 452 Mich 92, 105-106, 117; 549 NW2d 849 (1996).

On remand we now determine "whether the subsequent search of defendant's home was proper." *Custer II, supra* at 344.

## II. STANDARD OF REVIEW

We review for clear error a trial court's factual findings in a suppression hearing. *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999);

*People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). However, the constitutional questions relevant to the suppression hearing are questions of law that are reviewed de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998); *People v Nelson*, 443 Mich 626, 631, n 7; 505 NW2d 266 (1993). See also *People v Garvin*, 235 Mich App 90, 96; 597 NW2d 194 (1999).

### III. ANALYSIS

We are faced with two separate issues with regard to whether defendant's home was properly searched. First, we must determine whether defendant's Fourth Amendment rights were violated when Detective Flores looked into defendant's home through the front window without a search warrant. Second, we must determine whether the photographs, coupled with knowledge that objects in the defendant's home matched the photographs, provided probable cause to request a search warrant for defendant's home. We conclude that defendant's Fourth Amendment rights were not violated by Detective Flores' looking into defendant's house and that sufficient probable cause was present to justify a search warrant.

### A. DEFENDANT'S FOURTH AMENDMENT CHALLENGE[8]

Defendant first contends that Detective Flores violated defendant's reasonable expectation of privacy

---

[8] We note that our Supreme Court has previously held that, absent compelling reasons, the Michigan Constitution, Const 1963, art 1, § 11, affords the same level of protection with regard to unreasonable searches and seizures as the Fourth Amendment of the United States Constitution, US Const, Am IV. *People v Champion*, 452 Mich 92, 97, n 3; 549 NW2d 849 (1996), citing *People v Nash*, 418 Mich 196; 341 NW2d 439 (1983), and *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993). Because we

when he looked through the window of defendant's home without attaining a search warrant and that therefore defendant's Fourth Amendment rights against unreasonable searches and seizures were violated.[9] We disagree.

In *People v Lombardo*, 216 Mich App 500, 504-505; 549 NW2d 596 (1996), this Court provided the following two-part test with regard to Fourth Amendment challenges based on a violation of privacy:

> In determining whether a person has a legitimate expectation of privacy so as to confer standing to challenge a search and seizure as violative of the Fourth Amendment, a two-part inquiry is employed. First, a defendant must demonstrate that, under the totality of the circumstances, there existed a legitimate personal expectation of privacy in the area or object searched. *California v Greenwood*, 486 US 35, 39; 108 S Ct 1625; 100 L Ed 2d 30 (1988); *People v Armendarez*, 188 Mich App 61, 70-71; 468 NW2d 893 (1991). Second, the individual's expectation must be one that society accepts as reasonable. *California, supra; Armendarez, supra.*

As previously indicated, the record establishes that Detective Flores went to defendant's home in order to determine if it was the residence depicted in the pho-

---

do not find compelling reasons sufficient to deviate from this general rule, we find that defendant's challenge is controlled by Fourth Amendment jurisprudence, and therefore we need not independently analyze defendant's claim under the Michigan Constitution. See *People v Lombardo*, 216 Mich App 500, 504; 549 NW2d 596 (1996), *People v Catanzarite*, 211 Mich App 573, 580; 536 NW2d 570 (1995), and *Custer II, supra* at 345, n 1 (CAVANAGH, J., dissenting).

[9] The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . . [US Const, Am IV.]

See also *Lombardo*, n 8, *supra* and *People v Catanzarite*, n 8, *supra*.

tographs. In addition, we note that it was only after Detective Flores arrived at the front entrance of the home that he noticed that the window immediately to the left of the door had its inside blinds pulled up, allowing him, with the aid of light from his flashlight and defendant's neighbor's house, to observe what was in the room. Because Detective Flores was properly present on defendant's porch when he observed the objects through defendant's window, his actions were entirely proper. *People v Shankle*, 227 Mich App 690, 694; 577 NW2d 471 (1998), citing *People v Freeman*, 413 Mich 492, 496-497; 320 NW2d 878 (1982) ("Merely entering the private property of another is not an offense unless one has been forbidden to do so or refuses to depart after having been told to do so by a proper person."). See *United States v Dunn*, 480 US 294, 305; 107 S Ct 1134; 94 L Ed 2d 326 (1987), and *People v Whalen*, 390 Mich 672, 678-679; 213 NW2d 116 (1973); see also *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967), and *People v Champion*, 452 Mich 92, 101-103; 549 NW2d 849 (1996) (discussing the plain view doctrine generally).

Because the blinds were not drawn, defendant had no actual, subjective expectation of privacy in the contents of the front room. Cf. *People v Smith*, 420 Mich 1, 26-28; 360 NW2d 841 (1984). As stated in *People v McKendrick*, 188 Mich App 128, 143-144; 468 NW2d 903 (1991), quoting *United States v Taborda*, 635 F2d 131, 138 (CA 2, 1980):

> "The very fact that a person is in his own home raises a reasonable inference that he intends to have privacy, and that if that inference is borne out by his actions, society is prepared to respect his privacy. But the inference may be

rebutted by the person's own actions. If in his own home he conducts activities or places objects in such a way that the activities or objects are seen by the unenhanced viewing of persons outside the home, located where they may properly be, such observations transgress no Fourth Amendment protection because 'no intention . . . has been exhibited' by the householder to prevent the unenhanced viewing of others." [quoting *Katz v United States*, 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967).]

The fact that Detective Flores' view was aided by a flashlight is of little jurisprudential relevance. As stated in *Whalen, supra* at 679, quoting *Marshall v United States*, 422 F2d 185, 189 (CA 5, 1970):

"When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned . . . . The plain view rule does not go into hibernation at sunset."

See also *People v Goodman*, 58 Mich App 220, 223; 227 NW2d 261 (1975). Under these circumstances, we conclude that Detective Flores' observations did not invade defendant's privacy expectations. *Lombardo, supra.* Thus, defendant's Fourth Amendment rights were not violated.

### B. PROBABLE CAUSE TO SEARCH DEFENDANT'S HOME

As a preliminary matter, we note that " '[p]robable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence

of a crime or the contraband sought is in the place requested to be searched.' " *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001), quoting *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992). See also *People v Nunez*, 242 Mich App 610, 612; 619 NW2d 550 (2000), quoting *People v Stumpf*, 196 Mich App 218, 227; 492 NW2d 795 (1992) (" 'Probable cause exists when a person of reasonable caution would be justified in concluding that evidence of criminal conduct could be found in a stated place to be searched.' ").

Here, the properly seized and examined photographs depicted (1) Holder carrying two one-pound bags of marijuana with additional one-pound bags of marijuana on a coffee table in front of him, (2) a number of one-pound bags of marijuana, and (3) Holder sitting in a chair next to a suitcase that contained numerous one-pound bags of marijuana. As a result of these photographs, Detective Flores went to defendant's residence, where he observed objects similar to those seen in the photographs. On the basis of these observations, there was probable cause to believe that defendant's residence was the same residence depicted in the validly seized and examined photographs. *Ulman, supra; Nunez, supra*. In addition, we note that defendant's cohort, Holder, was carrying both a large amount of cash in small denominations and a small plastic bag of marijuana at the time he was arrested and that, while being placed in the squad car, Holder yelled to defendant "[d]on't tell them a f——thing." Further, defendant admitted being in the presence of Holder all evening. Because defendant admitted being with Holder the entire evening and since objects in the photographs matched objects

in defendant's residence, probable cause existed to issue a search warrant for defendant's home. *Ulman, supra; Nunez, supra.* As such, the evidence found at defendant's home was properly seized and should not have been suppressed. Accordingly, we find that there was probable cause to bind defendant over for trial.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.