Makkman, J.
After arresting defendant’s companion for possessing marijuana, a police officer conducted a patdown search of defendant. The officer removed what he believed to be blotter acid from defendant’s pocket and placed it on the roof of the vehicle. When the officer finished searching defendant, he retrieved the object from the roof of the vehicle and observed what appeared to be three photographs facing down. He turned them over to examine the fronts of them. The photographs depicted defendant’s companion posed in a house containing large quantities of marijuana. The police went to defendant’s house and observed furnishings similar to those in the photo *323 graphs. They obtained a search warrant for defendant’s house and seized marijuana therein.
Defendant was charged with several drug-related offenses. The district court dismissed the charges on the ground that the patdown search of defendant had been illegal. The circuit court affirmed the district court’s decision. The Court of Appeals affirmed the circuit court’s decision on the ground that, even though the patdown search of defendant had been legal, the police officer should not have turned the photographs over to examine the fronts of them. We granted leave to consider whether it was proper for the police officer to: (1) briefly detain defendant, (2) patdown defendant, (3) seize the photographs from defendant, and (4) turn the photographs over to examine the fronts of them. We conclude that it was. Accordingly, we would affirm the decision of the Court of Appeals that the brief detention of defendant, the patdown search of defendant, and the initial seizure of the photographs from defendant were proper, and we would reverse the decision of the Court of Appeals that the police officer’s turning over and examining the photographs was improper.
I. FACTS AND PROCEDURAL HISTORY
Two police officers were dispatched to a residence in Bay City to investigate a possible trespass. When they arrived at the location, the officers observed a parked vehicle occupied by Billy Holder and defendant. One of the officers approached Holder, the driver of the vehicle, and asked him to get out of the vehicle. Because the officer believed that Holder was intoxicated, the officer advised Holder that he could not drive, and thus his vehicle would have to be *324 towed at his own expense. When the officer asked Holder to demonstrate that he had enough money to pay for the towing, Holder removed approximately $500, mostly in ten and twenty dollar bills, from his pants pocket, along with a plastic baggie that contained marijuana. The officer arrested Holder and placed him in the patrol car. Once Holder was placed in the patrol car, Holder yelled to defendant, “don’t tell them a f-thing.” The officer then asked defendant to step out of the vehicle, and conducted a patdown search of defendant. At this point, the officer anticipated finding weapons and drugs on defendant. During the patdown, the officer felt what he believed to be a two-by-three-inch card of blotter acid in defendant’s front pants pocket. The officer’s belief was based on his knowledge that blotter acid is often contained on sheets of cardboard. The object was actually three Polaroid photographs that showed Holder posed with large quantities of marijuana in the living room of defendant’s house. The officer removed the photographs from defendant’s pocket and placed them on the roof of Holder’s vehicle face down. It was only after finishing the patdown of defendant moments later, that the officer picked the photographs up and turned them over to examine their fronts.
After the photographs were seized from defendant by the police, a Bay City detective contacted a Mount Pleasant detective and provided him with three addresses, including defendant’s address, to determine if any of the houses contained furnishings similar to those found in the photographs. The Mount Pleasant detective peered into defendant’s house through the front window using a flashlight. His *325 observation of furnishings similar to those in the photographs was used to obtain a search warrant for defendant’s house, from which marijuana was seized.
Defendant was charged with delivery and manufacture of 5 to 45 kilograms of marijuana, MCL 333.7401(2)(d)(ii), maintaining a drug house, MCL 333.7405(d), and conspiring to deliver 5 to 45 kilograms of marijuana, MCL 750.157a. The district court suppressed the photographs taken from defendant and the evidence obtained from the search warrant executed at defendant’s home on the basis that the patdown search of defendant had been illegal. As a result of such suppression, the district court dismissed the charges against defendant. The circuit court then affirmed the decision of the district court, and the Court of Appeals affirmed the decision of the circuit court. 242 Mich App 59; 618 NW2d 75 (2000). However, the Court of Appeals concluded that the patdown search of defendant had been legal, but that the officer should not have turned the photographs over to look at their fronts. Additionally, the circuit court found the search of defendant’s home to be improper, but the Court of Appeals never reached that issue.[1] This Court granted the prosecutor’s application for leave to appeal and defendant’s application for leave to cross-appeal. 463 Mich 907 (2000).
□. STANDARD OF REVIEW
This Court reviews a trial court’s factual findings in a suppression hearing for clear error. People v Stevens *326 (After Remand), 460 Mich 626, 631; 597 NW2d 53 (1999); People v Burrell, 417 Mich 439, 448; 339 NW2d 403 (1983). However, “[application of constitutional standards by the trial court is not entitled to the same deference as factual findings.” People v Nelson, 443 Mich 626, 631, n 7; 505 NW2d 266 (1993). The application of the exclusionary rule to a violation of the Fourth Amendment is a question of law. Stevens, supra at 631. Questions of law relevant to the suppression issue are reviewed de novo. Id.; People v Sierb, 456 Mich 519, 522; 581 NW2d 219 (1998).
m. ANALYSIS
A. DETENTION
The first issue is whether the initial detention of defendant was invalid under the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11, which guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § ll.[2] “[A] police *327 officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” Terry v Ohio, 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A brief, on-the-scene detention of an individual is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention. Michigan v Summers, 452 US 692, 699-700; 101 S Ct 2587; 69 L Ed 2d 340 (1981); People v Shabaz, 424 Mich 42, 56-57; 378 NW2d 451 (1985). “Police officers may make a valid investigatory stop if they possess ‘reasonable suspicion’ that crime is afoot.” People v Champion, 452 Mich 92, 98; 549 NW2d 849 (1996).
In this case, the police were dispatched to a residence to investigate a complaint regarding a possible trespass. When they arrived at the scene, they found Holder and defendant in a parked vehicle, and very briefly questioned them about their presence in the area. They determined that Holder, the driver of the vehicle, was too intoxicated to be driving. Therefore, they began to make arrangements for Holder’s car to be towed so that defendant and others on the road would not be jeopardized. While making these arrangements, Holder (presumably inadvertently) pulled a baggie of marijuana out of his pocket, and was arrested. Immediately after this arrest, the police conducted a patdown search of defendant.
In summary, before the marijuana was found, the police, upon a complaint of criminal conduct, properly detained defendant in a public place, for the purpose of determining whether a crime had been committed. See Shabaz, supra at 56. Further, after the *328 marijuana was found, the police properly detained defendant for the purpose of conducting a limited search for weapons on the basis of reasonable suspicion. See Champion, supra at 99. Therefore, we conclude that the brief detention of defendant in this case was valid under the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11.
B. PATDOWN SEARCH
The next issue is whether the patdown search of defendant was invalid under the Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11. A police officer may perform a limited patdown search for weapons if the officer has a reasonable suspicion that the individual is armed, and thus poses a danger to the officer or to other persons. Terry, supra at 27; Champion, supra at 99. “The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Terry, supra at 27. “Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or ‘hunch,’ but less than the level of suspicion required for probable cause.” Champion, supra at 98. In order to demonstrate reasonable suspicion, an officer must have “specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.” Terry, supra at 21.
It is the totality of the circumstances in a given case that determine whether a patdown search is constitutional. Champion, supra at 112. In this case, *329 defendant was a passenger in a vehicle in which criminal activity was discovered. The driver of the vehicle, Holder, was found with a large amount of cash in small denominations and a baggie of marijuana, which led the officer to believe that Holder was selling drugs. The officer was told that defendant and Holder had been together all evening. After Holder was arrested and placed in the patrol car, he yelled to defendant not to tell the police anything. The officer testified that, because of his twenty-three years of experience and training as an officer, he knew that when drugs are involved, weapons are also often involved. Therefore, the basis for his decision to conduct a patdown search of defendant was that defendant might be in the possession of a weapon, thereby posing a threat to himself or his partner. Under the totality of the circumstances before us, we find that the police had reasonable suspicion to warrant a patdown search of defendant.[3]
Furthermore, the fact that the officer did not fear for his safety before the marijuana was found does not change our conclusion that the patdown search of defendant was proper. The relevant inquiry when determining whether the police have properly conducted a patdown search is “whether the officer’s action was justified at its inception . . . .” Terry, swpra at 20. Therefore, the fact that the officer did *330 not fear for Ms safety before the marijuana was found is irrelevant; what is relevant is that, after it was found, the officer was concerned for Ms safety, and tMs was when the officer conducted the patdown search of defendant. Additionally, the fact that the officer anticipated finding drugs on defendant as a result of tMs search does not change our conclusion that the patdown search of defendant was proper. The UMted States Supreme Court has held that
evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by ... a valid exception to the warrant requirement. [Horton v California, 496 US 128, 138; 110 S Ct 2301; 110 L Ed 2d 112 (1990).]
The proper focus is on the actions of the officer, not Ms thoughts. In the present case, it is irrelevant that the officer was secondarily looking for drugs because the principal purpose of the patdown search of defendant was to ensure that he did not have any weapons. Accordingly, we find that the objective facts that prompted the officer to determine that Ms safety, and that of Ms partner, might be at risk, were sufficient to warrant the patdown search of defendant. Therefore, we conclude that the patdown search of defendant was valid under the Fourth Amendment of the UMted States Constitution and Const 1963, art 1, § 11.
C. SEIZURE OF THE PHOTOGRAPHS
The third issue is whether the seizure of the photographs from defendant during the patdown search of *331 defendant was invalid under the Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11. This Court has previously held:
The plain feel exception to the warrant requirement adopted by the United States Supreme Court in Minnesota v Dickerson, [508 US 366; 113 S Ct 2130; 124 L Ed 2d 334 (1993)] allows the seizure without a warrant of an object felt during a legitimate patdown search for weapons when the identity of the object is immediately apparent and the officer has probable cause to believe that the object is contraband. [Champion, supra at 100-101 (emphasis in the original).]
In conducting a patdown search, an officer may seize items that the officer has probable cause to believe are contraband from the plain feel. “[A]n object felt during an authorized patdown search may be seized without a warrant if the item’s incriminating character is immediately apparent . . . .” Id. at 105. Patdown searches are designed to discover weapons or other instruments that might injure an officer. However, when conducting a patdown search, police officers may also seize noncontraband objects that they have probable cause to believe feels like contraband. Minnesota v Dickerson, supra at 373; Champion, supra at 105-106.
In this case, while conducting the patdown search of defendant, the officer felt a two-by-three-inch object in defendant’s pocket that he believed was a card of blotter acid. His belief was based on his knowledge that blotter acid was often contained on sheets of cardboard; his awareness that cards of blotter acid were capable of fitting into a pants pocket like that he felt on defendant; the antecedent discovery of marijuana and a large amount of money on *332 Holder, the driver of the vehicle in which defendant was a passenger; Holder’s shout to defendant not to tell the police anything; the fact that defendant was with Holder during the entire evening; and the officer’s training and twenty-three years of experience as a police officer. Under these circumstances, the officer had probable cause to believe that the object he felt in defendant’s pocket was contraband. Accordingly, the officer was justified in removing the photographs from defendant’s pocket pursuant to the plain feel exception to the warrant requirement.
Furthermore, it is irrelevant that what was ultimately retrieved from defendant’s pocket was not, in fact, blotter acid. What is relevant is that the officer had probable cause to believe that the photographs were blotter acid from his plain feel. The probable cause requirement does not demand “that a police officer ‘know’ that certain items are contraband . . . .” Texas v Brown, 460 US 730, 741; 103 S Ct 1535; 75 L Ed 2d 502 (1983). Rather, “probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would ‘warrant a man of reasonable caution in the belief,’ Carroll v United States, 267 US 132, 162; 45 S Ct 280; 69 L Ed 543 (1925), that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false.” Id. at 742. Once an officer has probable cause to believe that an object is contraband, he may lawfully seize the object. Champion, supra at 105. The fact that the officer is ultimately wrong in his assessment of the object does not render the seizure unlawful. As discussed above, the officer had probable cause to believe that the photographs were blotter acid, and thus he lawfully seized them from defen *333 dant, regardless of the fact that they subsequently proved instead to be photographs. Therefore, we conclude that the seizure of the photographs from defendant was valid under the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11.
D. SEARCH OF THE PHOTOGRAPHS
The final issue is whether the turning over and examining of the fronts of the photographs that were validly seized was invalid under the Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11. A search for Fourth Amendment purposes occurs only when “an expectation of privacy that society is prepared to consider reasonable is infringed.” United States v Jacobsen, 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984). “If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no ‘search’ subject to the Warrant Clause.” Illinois v Andreas, 463 US 765, 771; 103 S Ct 3319; 77 L Ed 2d 1003 (1983). If a person has no reasonable expectation of privacy in an object, a search of that object for purposes of the Fourth Amendment cannot occur. Dickerson, supra at 375; People v Brooks, 405 Mich 225, 242; 274 NW2d 430 (1979).
In this case, when the officer turned the lawfully seized photographs over to examine their fronts, this was not a constitutional “search” for purposes of the Fourth Amendment. At this point, defendant’s reasonable expectation of privacy in the outer surfaces of the photographs had already been significantly diminished, at least sufficiently to justify the officer’s turn *334 ing over and looking at the photographs.[4] The photographs were already lawfully seized by the officer. Once an object is lawfully seized, a cursory examination of the exterior of that object, like that which occurred here, is not, in our judgment, a constitutional “search” for purposes of the Fourth Amendment.[5] See Arizona v Hicks, 480 US 321, 325-326; 107 S Ct 1149; 94 L Ed 2d 347 (1987). This is true because a cursory examination of the exterior of an object that has already been lawfully seized by the police will produce no additional invasion of the individual’s privacy interest.[6] “It would be absurd to say that an object could be seized and taken from the prem *335 ises, but could not be moved for closer examination.” Id. at 326. Once the police have lawfully seized an item from a person, that person’s reasonable expectation of privacy in the exterior of that item has, at the least, been significantly diminished.[7] “Once an item has been seized in connection with a lawful search . . . any expectation of privacy by a person claiming ownership is significantly reduced.” MacLaird v Wyoming, 718 P2d 41, 44 (Wy, 1986). For example, in United States v Bonfiglio, 713 F2d 932, 937 (CA 2, 1983), the court held that the police, who had lawfully seized a tape cassette, were not required to obtain a search warrant before playing the cassette because, once it had been lawfully seized, defendant no longer had a reasonable expectation of privacy in the recorded statement. Similarly, in this case, the police, who had lawfully seized three photographs, were not required to obtain a search warrant before turning the photographs over to examine their outer surfaces because, once they had been lawfully seized, defendant’s reasonable expectation of privacy in these surfaces had been significantly diminished, at least enough to justify the cursory examination that occurred here.
Again, we emphasize that the turning over of the photographs occurred only after the police had already lawfully seized them from defendant. The reason that the police, in this case, were allowed to turn the photographs over was because they already had *336 valid possession of them. In Hicks, supra at 326, the United States Supreme Court held that the police could not move stereo equipment to see the serial numbers on it because the police lacked probable cause to believe it was contraband before they moved it. However, in this case, the Court of Appeals correctly determined that the photographs had already been lawfully seized by the police. Where Hicks involved a preseizure movement or action by the police, the present case involves a postseizure movement or action. The police cannot manipulate an object in order to determine whether it is contraband; it must be immediately apparent from plain view or plain feel that the object is contraband. Id. In the present case, the police did not move the object to examine it more closely in order to determine whether it was, in fact, contraband; rather, the police already had probable cause to believe that it was contraband upon plain feel, and only after the object was validly seized did they move the object to examine it more carefully. Because the officer had already lawfully seized the photographs when he turned them over to examine their fronts, and because defendant’s reasonable expectation of privacy in the outer surfaces of those photographs had, at the least, been significantly diminished, there was no constitutional “search” for purposes of the Fourth Amendment.
As discussed above, it is irrelevant that the officer originally suspected that the seized object was blotter acid when it was actually photographs. What is again relevant is that the officer had probable cause to believe that the object was contraband from plain feel, and thus he lawfully seized it. Once the object was lawfully seized, the officer could look at its outer surfaces without obtaining a warrant. See Hicks, *337 supra at 325-326. In Brooks, supra at 250-251, this Court held that it was not a search for Fourth Amendment purposes when the police more carefully examined a noncontraband item that was seized from the defendant and that the police by then lawfully possessed. Once the police lawfully have possession of an object, there is no need for the police to obtain a search warrant to look at or scrutinize the exterior of that object. People v Rivard, 59 Mich App 530, 533-534; 230 NW2d 6 (1975). This is true because once the police lawfully take possession of an object, one’s expectation of privacy with respect to that object has “at least partially dissipated . . . .’’Id. For these reasons, we conclude that the exterior of an item that is validly seized during a patdown search may be examined without a search warrant, even if the officer subsequently learns that the item is not the contraband the officer initially thought that it was before the seizure.
In this case, the Court of Appeals correctly determined that the police officer had lawfully seized the photographs and that the officer had lawfully placed the photographs face down on the roof of the vehicle. However, the Court of Appeals held that the officer should not have turned the photographs over to examine their fronts. Apparently, the Court of Appeals decision would have been different, if the photographs had been placed on the car face up, rather than face down, because then the officer would not have had to turn the photographs over to see their face; instead, they would have been in plain view. We cannot agree with that kind of logic. The law should not turn on the serendipity of which side of the photographs were facing up when the officer removed them from defendant’s pocket. Rather, the *338 law turns on whether the officer’s actions violated any of defendant’s constitutional rights. We do not believe that they did. Regardless of which side of the photographs came out facing up or down, the officer could look at all the sides of the photographs without violating any of defendant’s constitutional rights. Therefore, we conclude that the turning over and examining of the other side of the photographs by the police, under the circumstances of this case, did not deprive defendant of his constitutional rights under the Fourth Amendment of United States Constitution or Const 1963, art 1, § 11.
IV. RESPONSE TO THE DISSENT
The dissent agrees with our conclusion that the brief detention of defendant was proper and that the patdown search of defendant was proper. However, it disagrees with our conclusion that the seizure of the photographs from defendant was proper and that the officer’s turning over and examining of the photographs was proper.
A. SEIZURE OF THE PHOTOGRAPHS
The dissent concludes that the seizure of the photographs from defendant was improper. We, of course, disagree. The dissent contends that “[i]n Champion, the majority extended the United States Supreme Court decision in Dickerson to encompass plain feel seizures of items that might contain contraband.” Post at 360 (emphasis added). First, this Court did not extend anything in Champion-, rather, it merely adopted the plain feel exception as articulated by *339 Dickerson.[8] Second, Champion did not conclude that under the plain feel exception the police may seize objects that might be contraband. Rather, Champion, supra at 105-106, concluded, as did Dickerson, that under the plain feel exception the police may seize an object from an individual only if they “develop [] probable cause to believe that the item felt is contraband
The dissent asserts that the fact that the officer thought that the object was blotter acid before he seized it when, in fact, the object was actually photographs is “certainly relevant to our determination whether probable cause existed.” Post at 362. However, even assuming that it is relevant, it is certainly not dispositive. The United States Supreme Court has said “probable cause . . . does not demand any showing that such a belief be correct.” Brown, supra at 742. Accordingly, in order to demonstrate probable cause, it is not necessary to show that the officer knew that the object was contraband before he seized it. Rather, it is only necessary, as was done in this case, to show that a reasonably cautious person in the circumstances would have been warranted in the belief that the object was contraband. Id.
*340 The dissent next asserts that the officer “would have had to manipulate the object in order to determine that it was in fact contraband.” Post at 364-365. However, the officer did not move, squeeze, or otherwise manipulate the contents of defendant’s pocket in order to determine that the object was contraband. Rather, the officer merely patted down defendant and, when his hand came upon the object, he had probable cause to believe that this object was contraband, and thus he lawfully seized it from defendant’s pocket.
The dissent further contends that we rely on the same factors to conclude that there was probable cause to believe that the object was contraband as we do to conclude that there was reasonable suspicion to believe that defendant was armed. Even if this were correct, we question its relevancy. We, of course, recognize that probable cause requires a higher level of justification than does reasonable suspicion. However, it is hardly improper to rely on the same factors to justify each. This is true because reasonable suspicion is merely a lower threshold of justification than probable cause. If, therefore, an officer has probable cause, he necessarily also has reasonable suspicion. Although it is then possible to rely on the same factors to justify each, we do not do so in this case. Rather, there are two relevant factors that support our finding of probable cause that do not support our finding of reasonable suspicion, i.e., the officer’s knowledge that blotter acid is often contained on sheets of cardboard and his knowledge that such cards of blotter acid could fit into a pocket like that of defendant’s.
*341 B. SEARCH OF THE PHOTOGRAPHS
The dissent concludes that, even assuming that the police lawfully seized the photographs from defendant’s pocket, the officer’s turning over and examining of the photographs was improper. We again disagree.
The dissent contends that Champion “did not allow a subsequent search merely because the item had been seized. Rather, it required the additional justification that the search occur incident to arrest.” Post at 360, n 7 (emphasis added). First, the Champion Court did not require the additional justification; it merely concluded that, under the facts, which included a search incident to arrest, the search was lawful. Second, and more importantly, the search in Champion involved the opening of a container, whereas in this case, the police merely turned photographs over and viewed their other side. We merely hold that, once an object has been lawfully seized, the police may shift the object and look at its exterior, we do not address here whether the police may open an object and look at its interior.[9]
The dissent next contends that “once the officer removed the photographs from the defendant’s pocket, it became clear that the object removed was not in fact cardboard . . . [t]hus, . . . the police no longer had justification for infringing the defendant’s *342 right to possess private photographs.”[10] Post at 367-368. However, given that the officer had already lawfully removed the photographs from defendant’s pocket, the additional action on the part of the police officer in turning them over did not constitute an invasion of the defendant’s privacy.
The dissent asserts that “[u]nder the view of the lead opinion, an individual’s expectation of privacy in a personal possession would evaporate at the moment an officer removes the item from the individual’s control, even when the officer’s belief is wrong.” Post at 368 (emphasis added). This is not an accurate statement of our holding. First, we make it quite clear that we do not conclude that, once the police lawfully seize an object from an individual, that individual’s reasonable expectation of privacy in that object is altogether lost. Instead, we merely conclude that defendant’s reasonable expectation of privacy in the outer surfaces of the photographs had been diminished, at least sufficiently to justify the officer’s merely turning over and looking at the other side of the photographs.[11] Second, we do not even conclude *343 that one’s reasonable expectation of privacy is diminished whenever an officer removes an object from one’s control, as the dissent implies. Rather, we conclude that one’s reasonable expectation of privacy is diminished only when an officer lawfully seizes an object from an individual. In order for an officer to lawfully seize an object from an individual, he must satisfy certain constitutional safeguards. Only after these safeguards have been satisfied can a police officer lawfully seize an object from an individual and view its exterior.
The dissent further asserts that “the lead opinion effectively creates an exception to the warrant requirement that permits a search incident to seizure.” Post at 370. However, our opinion in no way, permits a Fourth Amendment “search” incident to seizure. Instead, we conclude that there was no “search” in this case when the police turned the photographs over to examine their other side because, in order for there to be a “search,” one must have a reasonable expectation of privacy in the object being “searched.” In this case, the police had already lawfully seized the photographs, and, therefore, defendant’s reasonable expectation of privacy in the photographs already had been significantly diminished, at least sufficiently to justify the officer’s cursory examination of the other side of the photographs.[12]
*344 CONCLUSION
We conclude that the brief detention of defendant, the patdown search of defendant, the seizure of the photographs from defendant, and the examination of the photographs were each proper. First, because the officer had reasonable suspicion that criminal activity was afoot, the brief detention of defendant was proper. Second, because the officer had reasonable suspicion that defendant might be armed, and thus pose a danger to him and to other persons, the patdown search of defendant was proper. Third, because the officer had probable cause to believe that the object he felt in defendant’s pocket was contraband, the seizure of the photographs from defendant was proper under the plain feel exception to the warrant requirement. Finally, because defendant’s reasonable expectation of privacy in the outer surfaces of the lawfully seized photographs had, at the least, been significantly diminished, no “search” for purposes of the Fourth Amendment took place when the officer turned the photographs over and examined their other side. Accordingly, we would reverse the Court of Appeals decision that the officer’s turning over and examining of the photographs was improper. We would remand this case to the Court of Appeals for a determination whether the subsequent search of defendant’s home was proper.
Corrigan, C.J., and Taylor, J., concurred with Markman, J.

 We do not address whether the search of defendant’s home was proper because that issue is not properly before us. We remand this matter to the Court of Appeals for their consideration.

 Michigan’s constitutional prohibition against unreasonable searches and seizures “is to be construed to provide the same protection as that secured by the Fourth Amendment [of the federal constitution], absent, ‘compelling reason’ to impose a different interpretation.” People v Collins, 438 Mich 8, 25; 475 NW2d 684 (1991). However, if the item seized is a “narcotic drug . . . seized by a peace officer outside the curtilage of any dwelling house in this state,” Michigan’s constitutional prohibition against unreasonable searches and seizures is not applicable. Const 1963, art 1, § 11. Since marijuana is considered a narcotic drug for purposes of art 1, § 11, if the marijuana had been seized outside the curtilage of a dwelling house, Michigan’s constitutional prohibition against unreasonable searches and seizures would not be applicable, although the Fourth Amendment’s would be. Michigan v Long, 463 US 1032, 1044, n 10; 103 S Ct 3469; 77 L Ed 2d 1201 (1983). However, in the present case, the marijuana was found in the curtilage of defendant’s dwelling house, and thus both the Fourth Amendment’s and Michigan’s constitutional prohibition against unreasonable searches and seizures are applicable.

 We agree with the dissent that “defendant could not be stopped and frisked merely on the basis that he was associated with Holder. Rather, the circumstances had to indicate that the defendant himself was articulably and reasonably suspected of criminal wrongdoing, and suspected of being armed and dangerous.” Post at 353. We further agree with the dissent that the fact that defendant was associated with Holder, along with the other circumstances in this case, did indicate that defendant himself was, articulably and reasonably, suspected of being armed. Thus, the police officers were justified in conducting a patdown search of defendant.

 By a reasonable expectation of privacy being “significantly diminished,” we describe a situation in which an object, once lawfully seized, is subject at least to some type of manipulation. However, it does not mean that the object is subject to any type of manipulation. Once an object has been validly seized, an individual’s reasonable expectation of privacy is not necessarily lost altogether, allowing the police to manipulate the object any way they see fit; rather, one’s reasonable expectation of privacy is merely diminished, allowing the police to manipulate the object only in a manner consistent with the individual’s remaining reasonable expectation of privacy. A permissible manipulation may well be different for different types of objects and for different circumstances. The dissent asserts that “[i]f an individual has a diminished expectation of privacy, as opposed to no expectation of privacy, then necessarily he must have some expectation of privacy in the place to be searched.” Post at 370. We agree. However, in this case, the officer’s turning over and viewing the other side of the photographs did not, in our judgment, offend defendant’s remaining reasonable expectation of privacy.

 We conclude that once an object has been lawfully seized, the police may move the object and look at its outer surface or exterior. However, we do not address whether the police may manipulate an object in any other sort of way, i.e., open an object, once it has been lawfully seized because that question is not before us. Such a search is not implicated by this case.

 We use the terms “outer surfaces” and “exterior” to mean essentially the same thing, i.e., the outside of an object. We use the phrase “outer surfaces” when referring to the photographs because photographs do not typically have an exterior and an interior. We use the term “exterior” when referring to objects in general to make the point that our holding addresses whether the police can look at the exterior of an object, not whether, under different circumstances, they can look at their interior.

 We conclude that once the police lawfully seized the photographs, defendant’s reasonable expectation of privacy in the outer surfaces of those photographs was, at the least, significantly reduced. However, we do not address whether one has a reasonable expectation of privacy in items inside a container, i.e., purse, wallet, or luggage, once the police have lawfully seized the container because, again, that question is not before us.

 The dissent asserts that Champion did extend Dickerson because “the very type of additional search prohibited by Dickerson occurred in Champion” as evidenced by the fact that “before the officer in Champion could determine a pill bottle could be classified as contraband, he had to determine somehow that it was in fact used for an illegal purpose.” Post at 364, n 11. However, in our judgment, no such “additional search” occurred in Champion. Rather, the officer had probable cause to believe that the pill bottle was contraband without having to move, squeeze, or otherwise manipulate the pill bottle. Contrary to the dissent, the officer did not have “to determine somehow that it was in fact used for an illegal purpose”; rather the officer merely had to have probable cause to believe that it was contraband.

 The dissent asserts that “[t]he lead opinion seems to argue that the result might be different were the officer required to open a container and look inside. Yet, how can this be true considering that it places primary reliance on Champion, a case in which the officer did just that?” Post at 368-369, n 16. The dissent answers its own question: Champion “did not allow a subsequent search merely because the item had been seized. Rather, it required the additional justification that the search occur incident to arrest.” Post at 360, n 7.

 Contrary to the dissent’s assertion, we do not, by failing to reference certain language contained in the dissent, post at 368, n 14, fail to appreciate “that a search or seizure without a warrant is circumscribed by the warrant exception justifying it.” Rather, we conclude that no “search” occurred for purposes of the Fourth Amendment where the officer merely turned the lawfully seized photographs over and viewed their other side, and thus no “search” without a warrant occurred, requiring the application of a warrant exception.

 The dissent asks “[w]hen would a legitimate expectation of privacy preclude a further search under the rationale of the lead opinion?” Post at 368, n 16. The answer is that it would always preclude a further search. However, a further search would not necessarily be precluded where there is a warrant or an applicable exception to the warrant requirement. If an officer improperly seizes an object from an individual’s pocket, that individual would have a legitimate expectation of privacy that would preclude any further “search” of that object. If, on the other hand, an officer properly seizes an object from an individual’s pocket, that individual *343 would also have a legitimate expectation of privacy, but, under the specific circumstances of the instant case, such expectation would not arise until some time after the officer had merely turned over the photographs to view their other side. As we have already made clear, we are not addressing whether the police may manipulate a lawfully seized object in some manner beyond what has specifically occurred here because that question is not before us.

 The dissent of Justice Young presents in more undiluted form the argument that the turning over of the photographs to view their other side constituted a Fourth Amendment violation. For the reasons set forth in *344 this opinion, we do not believe that the constitutional underpinnings of the officer’s conduct here rest upon whether the lawfully seized photographs were seized facing up or facing down, or adjusted from one position to the other.