*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERRY KENNETH ADAMS, JR.,

Defendant-Appellant.

UNPUBLISHED
May 20, 2026
10:45 AM

No. 373496
Gogebic Circuit Court
LC No. 2024-000003-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for: (1) third-degree fleeing and eluding a police officer, MCL 257.602a(3)(b); and (2) assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to serve 43 days in jail. We affirm.

## I. FACTS

This case arises out of an officer's attempt to issue traffic citations to a line of vehicles stopped on a street that were attempting to enter a marijuana dispensary parking lot. The street at issue, Wemple Street, was a side road connected to a busier street; as denoted by signs, no parking was allowed on either side of Wemple Street. Nevertheless, it became routine for dispensary customers to wait in line, in their vehicles, on the right side of Wemple Street.[1] As a result, the Ironwood Public Safety Department received "numerous complaints" about the resulting traffic. The Department's initial policy was to tell the drivers to move along, but on the day of this incident, the Department instructed an officer ("the officer") to start issuing citations for "no parking or impeding traffic."

---

[1] To be clear, although the vehicles were lined upon on the street next to the dispensary parking lot, we note that the video of the incident shows that they were *not* stopped in traffic, i.e., this was not a situation in which traffic attempting to enter the parking lot had caused a backup on the roadway. Rather, each car appeared to simply be stopped on the road, with a significant space in between each respective vehicle, and the entrance to the parking lot was not blocked.

When the officer arrived at Wemple Street, he parked behind five stationary vehicles that were waiting in line on the right side of the road.[2] The officer walked by each vehicle, telling each driver he passed to wait and that they were not free to leave. Defendant's vehicle was the third in the line. When passing defendant's vehicle, the officer stated, "Wait here. You're not free to leave." Defendant asked, "Is this good?" The officer replied, "No. Wait here, you're not free to leave." The officer continued walking forward and began speaking with the first driver in the line.

While the officer spoke with the first driver, defendant pulled his vehicle into the left lane and started driving forward. The officer said, "No!" and walked in front of defendant's vehicle. Defendant stopped, and the officer walked to defendant's driver's side window to speak with him. The two engaged in a heated argument, with the officer telling defendant that he was being cited for parking in a no-parking area, and defendant arguing that he had not violated any law. Twice defendant told the officer that he would pull over nearby, and the officer told him to stay where he was. Eventually, without permission to do so, defendant drove to the end of Wemple Street and turned right out of the officer's sight. Unbeknownst to the officer, defendant pulled into the dispensary parking lot and joined the standing line of customers.

The officer called in on his radio, giving the station defendant's Minnesota license plate information and stating that defendant was "fleeing." Nine minutes later, after driving around the area looking for defendant, the officer spotted defendant standing in the line. The officer parked, approached defendant, and said, "Come here!" Defendant walked toward the officer, saying, "Listen, I'll talk to you bro, but I did not do anything wrong, man. I was just waiting in line to pull in the parking . . . ."[3] The officer said, "Okay. Yeah, you did. You're under arrest. Come over here," as he grabbed defendant's arm. A "physical altercation" ensued. The officer pushed defendant down to the parking lot pavement. Defendant struggled, screamed, and cursed before the officer and two other officers finally subdued him and placed him in handcuffs. Defendant sustained a scratch on his temple; he was taken to the hospital as a precaution, with no other injuries found. The officer's body-camera footage, which showed the entire incident, was played for the jury.

The jury found defendant guilty, and the trial court sentenced defendant, as stated earlier. Defendant now appeals.

## II. INSUFFICIENT EVIDENCE

On appeal, defendant first argues that there was insufficient evidence to sustain his convictions because: (1) the officer's initial stop was unlawful as defendant was not committing

---

[2] The left side of Wemple Street was empty.

[3] While walking toward the officer, defendant held out his hand. Defendant asserts that he held out his hand in an attempt to shake the officer's hand, but the body camera footage is unclear whether defendant was attempting to shake the officer's hand or if he was just motioning with his hands as he talked.

any traffic violations, (2) defendant did not show an intent to flee, and (3) defendant's subsequent resistance was a lawful response to unlawful force. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999).

"The evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt." *Id*. at 117. "An appellate court reviews de novo a lower court's determination that there was sufficient evidence to support a conviction, meaning that the appellate court provides no deference to the lower court's determination." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). "Yet reversing a guilty verdict on the basis that there was insufficient evidence is a high bar to overcome." *Id*. at 384-385.

[W]hen the lawfulness of police action is an element of a criminal offense, a court reviewing a challenge to the sufficiency of the evidence supporting a conviction must view the facts in the light most favorable to the prosecution and then determine whether, as a matter of law, an officer's actions were "lawful" in light of those facts. Under this test, a conviction will be overturned only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct. [*Id*. at 386.]

"It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). "The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). "[T]he prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"Our primary goal when interpreting a statute is to give effect to the Legislature's intent." *People v Lucynski*, 509 Mich 618, 647; 983 NW2d 827 (2022). "We begin with the plain and ordinary meaning of the statute, and if the text is clear and unambiguous, then it will be enforced as written." *Id*.

## B. TRAFFIC VIOLATION

Defendant first argues that there was insufficient evidence to sustain his convictions because he did not commit any traffic violations, making the officer's initial stop unlawful. We disagree.

"[A] traffic stop is more similar to a temporary seizure under [*Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] than a formal arrest." *Lucynski*, 509 Mich at 646 (citation omitted). "A brief, on-the-scene detention of an individual is not a violation of the Fourth

Amendment as long as the officer can articulate a reasonable suspicion for the detention." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). "Whether an officer has reasonable and articulable suspicion to briefly detain an individual is a fact-specific inquiry that is determined on a case-by-case basis." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021). "Although reasonable and articulable suspicion is a lesser showing than probable cause, it still entails something more than an inchoate or unparticularized suspicion or hunch, because an officer must have had a particularized and objective basis for the suspicion of criminal activity." *Id*. (quotation marks and citation omitted).

Both the Michigan Vehicle Code, MCL 257.923 *et seq*., and the Ironwood Code of Ordinances,[4] prohibit parking in an area with a no-parking sign. See MCL 257.674(1)(n); Ironwood Ordinance, § 30-530(a)(14).

Pursuant to the Michigan Vehicle Code, "[a] vehicle must not be parked, except if necessary to avoid conflict with other traffic or in compliance with the law or the directions of a police officer or traffic-control device, in any of the following places," including "[a]t a place where an official sign prohibits stopping or parking." MCL 257.674(1)(n). "A person who violates this section is responsible for a civil infraction." MCL 257.674(4). The Michigan Vehicle Code defines "[p]arking" as "standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs." MCL 257.38.

Similarly, pursuant to the Ironwood Code of Ordinances, "[a] vehicle shall not be parked, except if necessary to avoid conflict with other traffic or in compliance with the law or the directions of a public safety officer or traffic-control device, in any of the following places," including "[a]t a place where an official sign prohibits stopping or parking[.]" Ironwood Ordinances, § 30-530(a)(14). "A person who violates this section is responsible for a civil infraction." Ironwood Ordinance, § 30-530(b). The Ironwood Code of Ordinances defines "[p]arking" as "standing a vehicle, whether occupied or not, upon a highway when not loading or unloading, except when making necessary repairs." Ironwood Ordinance, § 30-61 (emphasis omitted). And it defines "[s]tand or standing" as "the halting of a vehicle other than for the purpose of and while actually engaged in receiving or discharging passengers." Ironwood Ordinance, § 30-81 (emphasis omitted).

In this case, defendant argues that his vehicle not "parked," but merely "standing" or "stopping." But defendant fails to acknowledge that the Michigan Vehicle Code and the Ironwood Code of Ordinances both define "parking" as "standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs." MCL 257.38; see Ironwood Ordinances, § 30-61. Body-camera footage clearly showed that defendant's vehicle was stopped and standing in a street with a no-parking sign; therefore, there was sufficient evidence for a factfinder to determine, beyond a reasonable doubt, that the officer had a legal basis to issue a traffic citation under both MCL 257.674(1)(n) and Ironwood Ordinance, § 30-530(a)(14). See *Cain*, 238 Mich App at 117. Accordingly, when viewing the facts in the light most favorable to

---

[4] Ironwood Michigan, *Code of Ordinances* <https://library.municode.com/mi/ironwood/codes/code_of_ordinances?nodeId=PTIICOOR_CH30TRMOVE> (accessed April 20, 2026).

the prosecution, the officer's actions were lawful. See *Prude*, 513 Mich at 386; *Custer*, 465 Mich at 327.[5]

## C. INTENT TO FLEE

Defendant further argues that there was insufficient evidence to sustain his conviction of third-degree fleeing and eluding a police officer because he did not show an intent to flee from the police. We disagree.

MCL 257.602a(1) states that when a police officer directs a driver to bring their vehicle to a stop, that driver "shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, . . . or otherwise attempting to flee or elude the officer."

In this case, ample evidence was presented to support the fleeing element. From the start, the officer twice told defendant, "Wait here. You're not free to leave." When the officer then went to speak to the driver of the first vehicle in line, defendant attempted to drive away, stopping only because the officer stood in front of his vehicle and told him to stop. Arguably, that action alone justified the fleeing element: defendant was already stopped, had been told to stay stopped, but instead began moving forward as if attempting to leave the area. But then for almost two more minutes, the officer continued to make it very clear that he was telling defendant to stop, while defendant argued with him. Defendant twice stated that he would drive his car and pull over into a nearby area, and the officer told him not to do that. Eventually, defendant started driving away. The officer again told him to stop, but defendant kept driving, turning out of sight. Defendant then parked outside the officer's view and entered the dispensary's standing line. There was no indication that defendant tried to find the officer again. It took over nine minutes for the officer to locate defendant's vehicle after defendant drove away, during which time the officer was under the impression that defendant had fled the area.

Accordingly, there was sufficient evidence for a factfinder to determine, beyond a reasonable doubt, that defendant intended to flee from the police. See *Cain*, 238 Mich App at 117.

## D. RESISTANCE

Defendant further argues that there was insufficient evidence to sustain his conviction of assaulting, resisting, or obstructing a police officer because his resistance was merely a lawful response to the police officers' use of excessive force. We disagree.

Defendant attempts to analogize this case to *People v Moreno*, 491 Mich 38, 46-47; 814 NW2d 624 (2012), in which the police were acting unlawfully from the start, thereby triggering the common-law right to resist an unlawful arrest. This reliance on *Moreno* is inapt because, as

---

[5] Because we conclude that defendant's vehicle was parked in a no-parking zone—providing the officer with a legal basis to issue a traffic citation—we do not reach the issue whether defendant's vehicle also impeded traffic.

discussed, defendant has failed to establish that the police had no lawful basis for detaining him in the first instance.

Defendant also contends that the *amount* of force that the police used against him was excessive. Determining whether the amount of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v Connor*, 490 US 386, 396; 109 S Ct 1865; 104 L Ed 2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-397. The inquiry is objective, viewing the officer's actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

Regarding the severity of the crime, defendant correctly points out that his initial stop was for a minor parking infraction. MCL 257.674(1)(n); Ironwood Ordinance, § 30-530(a)(14). But defendant then escalated the situation by attempting to drive away despite being told not to. By doing so, defendant satisfied the elements of third-degree fleeing and eluding, which is "a felony punishable by imprisonment for not more than 5 years or a fine of not more than $1,000.00, or both . . . ." MCL 257.602a(3). This justified the officer's initial use of force, which was to grab defendant by the arm when he was standing in line at the dispensary. But defendant again escalated the situation by struggling with the officer. By doing so, defendant satisfied the elements of assaulting, resisting, or obstructing a police officer, "a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." MCL 750.81d(1). This justified the officers' actions of bringing defendant down to the pavement and handcuffing him.

Regarding the threat that defendant posed to the safety of others, defendant's actions demonstrated some threat potential. He attempted to leave the traffic stop, engaged in an intense argument with the officer, and then actually drove away. This behavior justified reasonable concerns about why defendant was so quick to get away from the police, and it resulted in an angry driver fleeing the police. Then, when the officer grabbed defendant, and defendant resisted, an obvious concern was raised as to whether defendant could hurt himself or the officers if not promptly subdued and handcuffed.

Lastly, as previously stated, defendant clearly attempted to evade or resist arrest. Defendant had already driven away from the officer despite being told several times not to, turned out of the officer's sight, and gave no indication that he planned to meet up with the police again. The officer had to search for defendant before finding him waiting in the dispensary line. Because defendant had already fled once, the officer was justified in grabbing defendant's arm to prevent a second escape. Defendant then engaged in physical resistance, which justified the officers' actions of bringing defendant down to the pavement and handcuffing him.

Notably, there was testimony that the use of multiple officers in subduing defendant actually minimized injury to defendant, as opposed to the more violent methods that the officer

might have resorted to if he were left to bring defendant down by himself. Also, defendant was immediately taken to the hospital to ensure his physical well-being; he sustained only one minor injury, possibly from defendant's own physical exertions. Moreover, the jurors had the benefit of watching the entire encounter through the body-camera footage, which allowed them to observe the nuances of the situation presented to the officer and the actions that he took.

Accordingly, we conclude that the facts and circumstances of this case do not indicate that the amount of force used was unreasonable. See *Connor*, 490 US at 396-397. Therefore, sufficient evidence existed for a factfinder to determine, beyond a reasonable doubt, that defendant's resistance was not a lawful response to excessive force. See *Cain*, 238 Mich App at 117.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues that defense counsel was ineffective for not: (1) requesting a jury instruction focusing on the lawfulness of the officer's conduct, and (2) moving for a directed verdict. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not raise this issue in a motion for a new trial or evidentiary hearing filed in the trial court, or in a motion to remand for an evidentiary hearing filed in this Court, it is not preserved for appellate review. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). When a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

### B. ANALYSIS

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial. The test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id*.]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*

Because there are countless ways to provide effective assistance in each case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012).

## 1. JURY INSTRUCTIONS

Defendant first contends that the jury was not given enough information to understand and determine whether the officer acted lawfully in initiating defendant's detention.

Pursuant to the fleeing offense, the jury was instructed that the officer had to have been "performing his lawful duties . . . ." Similarly, pursuant to the assaulting, resisting, or obstructing offense, the jury was instructed that obstruction includes "a knowing failure to comply with a lawful command," and that conviction in this case required "that the defendant knew or had reason to know that [the officer] was a police officer performing his duties at the time," including that he "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act."

Defendant specifically argues that defense counsel was ineffective for not requesting the following jury instructions: (1) M Crim JI 15.5(2), which states in pertinent part that "[a]n arrest is legal if it is made [*describe circumstances for a warrantless arrest found in MCL 764.15,*]" with MCL 764.15(1)(a) explaining that a warrantless arrest is allowed when "[a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence"; and (2) M Crim JI 5(5), which states that "[t]he prosecutor must prove beyond a reasonable doubt that the [arrest was legal / the (officer . . . ) was acting within (his / her) legal authority]. It is up to you to determine whether the [officer's . . .] actions were legal according to the law as I have just described it to you." (Second, fifth, and sixth alterations in original.)

We agree that the trial court should have provided more specific definitions of "lawful duties" and "lawful act." More complete definitions would have better explained that the officer needed to have witnessed a statutory or ordinance violation in the first instance as well as the nature of the specific violations at issue. See *People v Carroll*, 514 Mich 851, 851; 8 NW3d 576 (2024) ("[A] jury cannot meaningfully assess whether an officer acted lawfully without detailed legal instructions regarding the applicable law governing the officer's legal authority to act.") (quotation marks and citation omitted).

We are not persuaded, however, that defense counsel's decision to not request such additional instructions constituted deficient performance. Defense counsel appears to have decided that the lawfulness of the officers' actions was the element most vulnerable to attack, but then also reasoned that the best way to attack it was to encourage the jury to agree that defendant was not "parking" as a matter of the commonsense meaning of that term. Given that, as we explained earlier, the legal definition of "parking" would not have favored defendant, defense counsel exercised reasonable trial strategy by not drawing attention to it. See *Strickland*, 466 US

at 689. For the same reasons, defendant has failed to show any prejudice to his defense. See *id*. at 687. Defendant violated MCL 257.674(1)(n) and Ironwood Ordinance, § 30-530(a)(14) by parking in an area with a no-parking sign; further legal definitions would only have enforced that fact and strengthened the prosecution's case.

Accordingly, defense counsel was not ineffective for failing to request a jury instruction focusing on the lawfulness of the officer's conduct. See *id*.

## 2. DIRECTED VERDICT

Defendant further argues that defense counsel was ineffective for not moving for a directed verdict. As previously discussed, there was sufficient evidence presented to sustain defendant's convictions; therefore, a motion for a directed verdict would have been properly denied. Defense counsel "was not required to argue a frivolous or meritless motion." *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991). Accordingly, defense counsel was not ineffective for failing to move for a directed verdict. See *Strickland*, 466 US at 687.

## IV. PROSECUTORIAL ERROR—INEFFECTIVE ASSISTANCE

Defendant further argues that he was denied a fair trial because of improper comments made by the prosecutor, and that defense counsel was ineffective for failing to object to such error. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because defense counsel did not contemporaneously object to the alleged instance of prosecutorial impropriety, that issue is not preserved for appellate review. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved issues are reviewed for plain error affecting substantial rights." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 475-476 (quotation marks and citation omitted). "Further, this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id* at 476 (quotation marks and citation omitted).

Because defendant did not raise his alternative ineffective-assistance-of-counsel claim in the trial court or in a motion to remand for an evidentiary hearing in this Court, it is also not preserved for appellate review. See *Abcumby-Blair*, 335 Mich App at 227; *Sabin*, 242 Mich App at 658. When a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *Unger*, 278 Mich App at 253.

## B. PROSECUTORIAL ERROR

As an initial matter, we submit that the term "prosecutorial error" is more appropriate than the term "prosecutorial misconduct" in this case. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) ("Although we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct.") (citations omitted).

"Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (quotation marks and citation omitted). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Id*. at 62-63. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "A defendant is entitled to a fair trial, not a perfect one." *Solloway*, 316 Mich App at 201.

In this case, the prosecutor made the following remarks in his opening statement:

[T]he complexion of this community changed significantly when these dispensaries came to town. And if you don't live in the City of Ironwood, but rather township, Watersmeet, Erwin, wherever, . . . thank your lucky stars. I mean, Ironwood's gained the reputation of a name change of Ironweed 'cause there's five dispensaries now. And what baffles the mind and me, as the prosecuting attorney, chief law enforcement official in this county, is, it invites people of all shapes and sizes into this community. And a majority of them are purchasing the product and bringing it back home to where it is illegal. For example, Wisconsin. Minnesota was illegal up until recently.

* * *

Again, I'm not here to disparage [defendant] and tell you he's a bad person. I'm not here to criticize him for what he chooses to do with marijuana. Except that I will say, anyone that purchases product and then decides to go through Wisconsin and Minnesota, back then, you're breaking the law. But we're not here for that today.

Defendant argues that these opening comments were not only irrelevant, but also an attempt to prejudice the jury against defendant because of his connection to the described problem and his status as an out-of-state purchaser. We agree that some of the prosecutor's remarks went beyond what was directly relevant to this case. "A prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237 (citation omitted). But, "viewed in context, the comments were relatively brief and did not likely deflect the jury's attention from the evidence presented in this case." *Id*. As previously discussed, the majority of the trial focused on the crimes at issue, and sufficient evidence was presented to sustain defendant's convictions. Moreover, at the conclusion of trial, the trial court clearly explained the elements of the charged crimes as well as the need for the jury to focus on the evidence presented, and that the attorney arguments are not evidence. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions."

-10-

*Id*. at 235 (citations omitted). "Finally, because a timely objection and curative instruction could have alleviated any prejudicial effect of the improper prosecutorial statement, we cannot conclude that the error denied defendant a fair trial or that it affected the outcome of the proceeding." *Id*. at 237.

Defendant also takes issue with the following remarks in the prosecutor's closing statement: "[D]efendant knew of the [officer's] order. In other words, the defendant was in a position to hear what he was told. There's no evidence that [defendant] was deaf, hard of hearing, didn't understand what the officer was saying, and the officer made it quite clear."

Defendant argues that the prosecutor misled the jury about his hearing ability, considering that he struggled to hear without the assistance of a device in the trial court proceedings. But defendant presented no evidence or argument at trial, and presents none on appeal, that the incident underlying this case resulted from any difficulty in hearing. The body-camera footage confirmed that defendant heard what the officer said; he simply disagreed that he was being lawfully detained. The fleeing-and-eluding charge required the prosecution to prove that defendant "willfully fail[ed] to obey" the officer's direction to bring his vehicle to a stop. MCL 257.602a(1). Accordingly, it was reasonable and proper for the prosecutor to clarify that there was no evidence presented establishing that defendant failed to obey the officer's directives simply because he could not hear them. See *Seals*, 285 Mich at 22.

## C. INEFFECTIVE ASSISTANCE

Defendant alternatively argues that defense counsel was ineffective for not objecting to these challenged remarks.

"[T]here are times when it is better not to object and draw attention to an improper comment." *Unger*, 278 Mich App at 242 (quotation marks and citation omitted). "Furthermore, declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Id*. "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id*. at 242-243. In this case, defendant has "simply failed to overcome the strong presumption that trial counsel's performance was strategic." *Id*. at 243. Moreover, defendant failed to show there is a reasonable probability that, "but for counsel's alleged errors, the result of defendant's trial would have been different." *Id*. As previously stated, the jury had the benefit of watching the entire incident via body-camera footage, and that footage contained sufficient evidence to sustain defendant's convictions. The prejudice prong of defendant's ineffective-assistance claim has therefore not been satisfied. See *Strickland*, 466 US at 687.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney

-11-