COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KALLANTA MILLER,

Defendant-Appellant.

UNPUBLISHED
April 28, 2015

No. 318725
Wayne Circuit Court
LC No. 13-005069-FH

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of felon in possession of a firearm, MCL 750.224f, two counts of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(v), and possession of a firearm during the commission of a felony, MCL 750.227b(1), in relation to his arrest while exiting a drug house. Defendant challenges the performance of defense counsel and the prosecutor at trial, as well as the reasonableness of the search and seizure of his person. Although defense counsel failed to reasonably investigate the prosecution's case by reviewing an available scout car video, doing so would not have altered the outcome. We affirm.

I. BACKGROUND

On the afternoon of May 17, 2013, two Detroit police officers on regular road patrol noticed two men leave a vacant house. One of the officers was familiar with the house and knew it was frequented for drug sales. The officers parked so they could question the men. Defendant immediately turned his back to the squad car and began fumbling about his waist, as if trying to hide a weapon or narcotics. The officers ordered defendant to turn around three to four times before he complied. Defendant continued to "crunch[] over" and dug his hands inside his pants pockets. When defendant finally raised his hands, a handgun fell to the ground from inside his shorts. The officers placed defendant under arrest and searched his person. They found heroin and crack cocaine in his pockets.

Following defendant's arrest, one of the officers prepared a written report. The vacant home did not have an address affixed to the building's exterior. Accordingly, the officer listed the address of a neighboring house—19962 Keating. Later investigation by defense counsel revealed that 19962 Keating was not a valid address. The block on which that address would be located was filled with vacant lots and only two extant homes. Defense counsel used this information to impeach the testimony of the testifying officer regarding his version of events.

-1-

Defendant also attempted to convince the jury that his compatriot on the day in question had possessed the handgun seized by the officers. At trial, the prosecutor presented footage from the scout car's dashboard video camera. This evidence established that defendant was arrested on a residential block filled with houses. One of the officers testified that he visited the area during trial and realized that he had transposed the numerals in the relevant address—19692 Keating. The jury accepted the prosecutor's evidence and convicted defendant.

## II. ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective. Specifically, defendant challenges defense counsel's decision to hang his hat on the nonexistent address listed in the police report without investigating the report's accuracy. Defendant further asserts that trial counsel was ineffective for failing to insist on fingerprint analysis of the handgun and drug evidence. Arguably, counsel should have reviewed the footage earlier and adjusted his defense strategy accordingly. Nevertheless we discern no error that affected the outcome of the trial. Therefore, relief is unwarranted.

Defendant failed to preserve his challenge by requesting a new trial or *Ginther*[1] hearing. Our review is therefore limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

> "'[T]he right to counsel is the right to the effective assistance of counsel.'" *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), lv to appeal held in abeyance on other grounds ___ Mich ___ (Docket No. 150454, entered March 31, 2015).]

Although defense attorneys are given wide discretion in relation to trial strategy, "a court cannot [completely] insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Counsel must reasonably

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

investigate the case and craft a defense strategy after adequate review. *Id.* Counsel may forgo avenues of investigation only after making a reasonable and considered decision to do so. *Id.*

Here, defense counsel failed to review the video footage from the scout car. Counsel presented testimony from the defense investigator that 19962 Keating did not exist and that the block on which such an address would otherwise be located was occupied with vacant lots. The prosecutor presented one of the arresting officers as a rebuttal witness and presented into evidence the dash-cam footage. The officer testified that he had transposed the numerals in the address and the video footage showed a residential street lined with houses. Defense counsel objected to the presentation of the footage, arguing: "I was given a video but it was a defective video and . . . I assumed she's not going to put it in her proof then I am not going to worry about it." The prosecutor denied that the video was defective, explaining: "[I]t has to be viewed with certain software not all computers can access it and I have made it and put it on record that it's available to [defense counsel] . . . ." The court subsequently adjourned for the day and the prosecutor assisted defense counsel in reviewing the footage. The court then admitted the footage into evidence.

Defense counsel attempted to review the scout car footage in the prosecutor's office, but the prosecutor was unable to play the video due to technical difficulties. The prosecutor invited defense counsel to return, and there is no record explanation of defense counsel's failure to take the prosecutor up on her offer.

Regardless whether the failure to return rises to the level of ineffectiveness, defendant cannot demonstrate a reasonable probability that the outcome of the trial would have differed had defense counsel reviewed the footage before trial. Certainly defense counsel would have pursued a different theory of the defense had he realized that the officer merely transposed the address numerals in the police report. However, the prosecution presented overwhelming evidence supporting defendant's conviction. A handgun fell from defendant's shorts while he stood in front of two Detroit police officers on a clear, sunny day. The officers witnessed defendant leave a vacant home known for drug activity and found illegal substances in defendant's pockets. In the face of such evidence, defense counsel's poorly chosen strategy was not outcome determinative.

Defendant contends, however, that defense counsel's deficient performance prevented him from rebutting the overwhelming evidence of his guilt. At trial, defendant presented the testimony of his uncle, Winton Miller. Miller testified that he was on Keating Street on May 17 visiting relatives and had telephoned defendant to meet him because he wanted to borrow a pair of shoes. Miller denied that he or defendant had entered a vacant home. Rather, he claimed that he and defendant were talking in the street when the officers pulled up and stopped them. Miller claimed that he was carrying a gun and "so [he] tossed it." Miller continued that the officers knocked him to the ground and took the handgun. The officers then removed heroin and crack cocaine from his person. Miller denied that the officers found any handgun or narcotics in their search of defendant. The prosecution impeached Miller's credibility with evidence of his past conviction for a crime involving theft.

The defense investigator used the address listed in the police report to canvass the neighborhood in an attempt to find a witness to support Miller's description of events. Had

defense counsel reviewed the footage and discovered the error earlier, the investigator could have canvassed the *correct* neighborhood in search of witnesses.[2] Defendant made no offer of proof that anyone on Keating Street witnessed the events and could have been discovered by canvassing the neighborhood, let alone that someone would have corroborated Miller's testimony. Accordingly, defendant cannot establish that this error was outcome determinative.

Defendant further contends that defense counsel should have insisted upon fingerprint analysis of the handgun and narcotic packets placed into evidence to support his theory that Miller had possessed these items. In the trial court, the prosecutor indicated that such analysis was not conducted because the officers personally witnessed defendant in possession of the gun and drugs. Neither the lack of defendant's fingerprints or the presence of Miller's fingerprints would have overwhelmed this observation. Such evidence simply would have supported that Miller handled the items before defendant placed them in his pocket. Accordingly, we discern no error in this regard, let alone error that was outcome determinative.

## III. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor engaged in improper conduct by bolstering the credibility of the prosecution witnesses and denigrating the defense. We generally review de novo prosecutorial misconduct claims, considering "whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). We review unpreserved claims for plain error affecting the defendant's substantial rights. *People v Meissner*, 294 Mich App 438, 455; 812 NW2d 37 (2011). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* In addition, reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (quotation marks and citation omitted). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). In the face of a misconduct challenge, we "must examine the entire record and evaluate the prosecutor's remarks in context." *Id.* at 64. Prosecutorial comments must be read as a whole and "evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.*

Defendant asserts that the prosecutor improperly vouched for the credibility of prosecution witness, Detroit Police Officer James Napier. The prosecutor began her closing argument by positing that Officer Napier was "honest" about the mistake he made when recording the house address in the police report. In this regard, the prosecutor continued, "Officer Napier testified credibly, he testified consistently." The prosecutor described how Officer Napier returned to the scene upon learning of his mistake so he could accurately correct the information. The prosecutor urged the jury that there was no reason to assume that Officer

---

[2] Unfortunately, the camera did not capture images of defendant or Miller until the officers ordered defendant to place his hands on the hood of the squad car. Accordingly, there is no physical evidence to either corroborate or contradict Miller's testimony.

Napier would "lie to set one of these guys up" because he did not know them. Defense counsel's closing argument focused on attacking Officer Napier's testimony and credibility. In rebuttal, the prosecutor remained with that theme. In this regard, the prosecutor argued, "He is a Detroit Police officer he's doing his job. You think he's going to put his career on the line to set up some guy that he has no history with no past with no reason to lie on. . . ." Moreover, the prosecutor posited, "it is more likely for a felon who is a thief who is probably a drug addict to lie for his nephew than it is for an officer to lie about something where his career is on the line." The prosecutor noted that despite Officer Napier's mistaken recording of the address, he "was still credible beyond a reasonable doubt."

"Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). While a prosecutor may not vouch for the credibility of the prosecution's witnesses "by suggesting that [s]he has some special knowledge of the witnesses' truthfulness," he or she is free to argue that a witness should be believed on the basis of the facts in evidence. *Id*.

The prosecutor did not improperly vouch for Officer Napier's credibility. Nearly the entire defense was geared at impeaching the officer and convincing the jury that he lied about the events on May 17. In his closing argument, defense counsel repeatedly asked the jury to find Officer Napier not credible based on Miller's testimony, the mistake that Officer Napier made regarding the address, and the fact that Officer Napier's partner did not testify at trial. As a result, nearly the entirety of the prosecutor's closing and rebuttal was devoted to debunking these theories. The prosecutor outlined Officer Napier's mistake about the address and how he remedied that error. The prosecutor argued that Officer Napier's mistake was a simple transcription error, not a purposeful scheme to frame defendant or Miller for any crime. These arguments directly responded to defense counsel's credibility attack and were based on the trial evidence, including the dash-cam footage. Accordingly, the prosecutor's remarks were not improper. See *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977) ("The prosecutor's remarks in this case were either proper argument based upon the evidence presented or responses to matters raised by the defendants in their proofs and closing argument. Certain of the latter remarks, although if standing alone could be seen as improper, do not constitute reversible error in this case because of their responsive nature[.]").

Defendant also contends that the prosecutor improperly denigrated Miller's credibility during closing and rebuttal. The prosecutor made comments such as "he doesn't know his left foot from his right foot," "he's a thief[,] [y]ou can consider that when you consider his credibility and truthfulness," "he probably is a drug addict that's probably why he was there in that area," "maybe he's been paid off or bribed[,] [m]aybe he wants to help his nephew," and "it is more likely for a felon who is a thief who is probably a drug addict to lie for his nephew than it is for an officer to lie about something where his career is on the line."

While a prosecutor must tread carefully not to cross the line of propriety, a prosecutor is "permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief." *Dobek* 274 Mich App at 67. Record evidence supported that Miller was a convicted felon who had engaged in theft crimes. That Miller was a drug addict arguably could be inferred from evidence that he and defendant were witnessed leaving a vacant home where drugs are sold,

Miller's admission to possessing drugs on the day in question, and Miller's testimony that he had abused crack cocaine in the past. And that Miller's relationship with defendant gave him a greater motive to fabricate events than Officer Napier, who was a complete stranger to defendant and Miller, was a fair argument based on the evidence and in response to defense counsel's arguments. See *People v Layher*, 464 Mich 756, 763-764; 631 NW2d 281 (2001) (discussing the relevance of evidence of witness bias). Accordingly, although the prosecutor employed strong language, we discern no ground for reversal.

Finally, defendant argues that the prosecutor improperly characterized defense counsel's argument and denigrated his integrity. Defendant challenges the following comments:

> And to say that [Napier is] lying about certain things or is mistaken about things he is not [sic] he's trying to blow smoke in your face in hopes that the illusion will be that Officer Napier is some really inconsistent terrible officer.

> * * *

> There are things that are not issues the defense counsel is making a big issue about because he's trying to distract you from the truth.

In *People v Wise*, 134 Mich App 82, 101-102; 351 NW2d 255 (1984), this Court stated:

> The prosecutor may not question defense counsel's veracity. When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [Citations omitted.]

Taken in isolation, the prosecutor's comments appear to improperly suggest that defense counsel was "intentionally trying to mislead the jury." Taken in context after reviewing the entirety of closing and rebuttal arguments, however, we decline to find that the prosecutor engaged in misconduct. In this regard, we find instructive *People v Watson*, 245 Mich App 572, 592-594; 629 NW2d 411 (2001). In *Watson*, this Court discerned that the prosecutor had improperly suggested that defense counsel attempted to distract the jury from the truth. Reversal was not warranted, however, because "[t]he prosecutor's comments . . . were made in rebuttal to defense counsel's closing argument, in which defense counsel emphasized discrepancies between the various accounts of the events . . . ." *Id*. at 593. In this case, the challenged comments occurred in rebuttal to defense counsel's closing argument, during which defense counsel stressed that Miller's and Officer Napier's testimonies conflicted. Defense counsel repeatedly stated that Officer Napier engaged in a "con job" or had made a mistake. It was not improper for the prosecutor to respond by emphasizing that defense counsel was focused on the little inconsistencies, and the jury should be focused on the "truth of the big picture." *Id*.

Moreover, the trial court instructed the jury that the attorneys' statements were not evidence, that the jury must decide the facts of the case, and that this includes whether the witnesses were telling the truth. "Jurors are presumed to follow their instructions, and

-6-

instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Therefore, even if the prosecutor erred, reversal would not be warranted.[3]

## IV. ILLEGAL SEARCH AND SEIZURE

Prior to trial, defense counsel sought suppression of the handgun and narcotics evidence, challenging the legality of the search and seizure. The trial court denied defendant's motion and the evidence was admitted at trial. We review de novo a trial court's ruling on a suppression motion. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011). We will not "disturb a trial court's factual findings unless those findings are clearly erroneous. A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *Id*. (citations omitted).

Both the United States and Michigan Constitutions protect against unreasonable searches and seizures. US Const Am IV; Const 1963, art 1, § 11. A police officer may conduct an investigative stop, or *Terry*[4] stop, if he "has a reasonable, articulable suspicion that criminal activity is afoot." *Steele*, 292 Mich App at 314. To determine if an officer had reasonable suspicion, the trial court should consider whether "the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity." *Id*. This determination is made case-by-case and under the totality of the circumstances. *Id*. The trial court should give deference to the "experience of law enforcement officers and their assessments of criminal modes and patterns." *Id*. at 315. An officer's subjective intent is irrelevant in determining whether a stop was supported by reasonable, articulable suspicion of unlawful activity. *People v Dillon*, 296 Mich App 506, 509; 822 NW2d 611 (2012). In addition, a search or seizure must be justified at its inception. *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005).

Defendant ignores one fact that precipitated the officers' decision to stop him—it is unlawful in the city of Detroit "for any person . . . to enter a vacant building, or the property on which the vacant building is located, without the express written authorization of the property owner . . . ." Detroit Ordinances, § 38-4-1. When a police officer knows that a law is being violated, he may lawfully detain the offender. See *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009) ("A police officer who witnesses a civil infraction may stop and temporarily detain the offender for the purpose of issuing a written citation."). Officer Napier observed the house that defendant exited as vacant—the windows were boarded up, and the front door barely hung on the hinges. Furthermore, Officer Napier had personal knowledge that two months earlier, the house had been vacant. Officer Napier therefore had probable cause to believe that

---

[3] As none of defendant's challenges to the prosecutor's commentary warrant relief, there is no ground to find defense counsel ineffective for failing to object. Similarly, defendant cannot establish that the cumulative effect of the prosecutor's highly responsive arguments justifies reversal.

[4] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

defendant was in violation of Detroit Ordinance § 38-4-1, and could lawfully detain defendant to issue a citation.

When defendant saw the police car, he "immediately turned around and faced away from [police]." Defendant refused to comply with Officer Napier's first three orders to turn around and face the officers. When defendant finally did turn around, he suspiciously bent over and dug in his pants pockets with both hands. Officer Napier reasonably feared that defendant may possess a weapon, putting the officer's safety in jeopardy. See *People v Custer*, 465 Mich 319, 328-330; 630 NW2d 870 (2001) (upholding the constitutionality of a patdown search promulgated by the officer's fear that the defendant had a weapon). Officer Napier's fears were justified as a handgun fell from defendant's shorts when he finally raised his hands into the air as instructed. Defendant's possession of a weapon gave the officer probable cause to arrest defendant. The officers never actually initiated a *Terry* stop. Instead, police initiated a stop to issue a civil infraction, which was quickly transformed into a lawful arrest based on the weapon. As such, defendant could establish no ground to suppress the handgun and narcotic evidence at trial.

We affirm.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

-8-